**Sheryl P. BROADNAX,**
**Plaintiff–Appellee,**

v.

**CITY OF NEW HAVEN, Defendant–**
**Appellant.**

**Docket No. 04–2196CV.**

United States Court of Appeals,
Second Circuit.

July 20, 2005.

Norman A. Pattis, Williams & Pattis, New Haven, CT, for Plaintiff–Appellee.

Charles D. Ray, Robert J., Gallo, (on the brief), McCarter & English, LLP, Hartford, CT, for Defendant–Appellant.

Present: CALABRESI, KATZMANN, and B.D. PARKER, Circuit Judges.

## SUMMARY ORDER

**ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court be and hereby is **AFFIRMED.**

Defendant-appellant City of New Haven ("the City") appeals from an order denying its motion for judgment as a matter of law under Federal Rule of Civil Procedure 50(b), or in the alternative for a new trial under Rule 59(a), entered on March 2, 2004 in the United States District Court for the District of Connecticut (Eginton, *J.*). The plaintiff-appellee, Sheryl P. Broadnax, is a former member of the New Haven Fire Department ("the Department"), who tried to a jury her Title VII gender and race discrimination, hostile work environment, and retaliation claims; her Fourteenth Amendment equal protection claim; and her First Amendment free speech claim. The jury, finding the City liable for all but the Title VII race discrimination claims, awarded Broadnax $1,446,772, of which $964,571 was an award of lost wages.

On October 22, 2003, the City filed its motion for judgment as a matter of law, or alternatively, a new trial. The district court initially stated that the City's motion was not timely filed, but elected to consider the motion anyway "in the interest of justice." The court rejected all the City's claims and denied the motion. The City appeals, asserting before us that (1) the award of lost wages was improper because Broadnax failed to present evidence that she mitigated her damages; (2) the jury's

lost wages award was excessive and not supported by the evidence; (3) the district court failed to give the jury appropriate instructions on how to determine front pay; and (4) the jury award should be reduced to $300,000 based on the Title VII statutory cap on compensatory and punitive damages. We consider the first issue, as well as whether it was appropriate to submit the lost wages issue to the jury, in an opinion filed contemporaneously with this order. In this summary order, we consider the City's remaining claims, and Broadnax's argument that the City's Rule 50 and Rule 59 motions were not timely filed.

Broadnax became the first African–American female firefighter in the Department in 1983. Upon being hired, she made it her goal to become Chief of the Department. She worked her way up the ranks, becoming a firefighter first grade in or around 1984, an emergency medical technician in 1993, a paramedic in 1996, a lieutenant in 1996, and a drillmaster in 1998. According to Broadnax, the discrimination she suffered included denial of funding for training while others were granted funding, the denial of necessary equipment, and being subjected to hostile cursing and open insubordination. She also asserted that her February 25, 2002 termination by the New Haven Board of Fire Commissioners was discriminatory. The stated basis for this termination was her alleged violation of a Department rule prohibiting unauthorized access to personal or medical information of other Department members. However, the state labor board later reduced this termination to a six-month suspension without pay, and, in a union-filed appeal, the Connecticut Superior Court vacated the six-month suspension. Broadnax testified that, although she understood that the effect of the decisions by the state labor board and the

Connecticut Superior Court was that she could return to work, she did not do so because she "couldn't take it anymore." The parties' familiarity with the additional facts is assumed.

The first argument we address is Broadnax's claim that the City's motion for judgment as a matter of law or in the alternative for a new trial was untimely, and that therefore the district court erred in considering it. This issue is easily resolved. A renewed motion under Rule 50(b) and a motion under Rule 59(a) must be filed within ten days after the entry of judgment. *See* Fed.R.Civ.P. 50(b), 59(b). The Federal Rules specify that an order of judgment based on a jury verdict is entered for purposes of the Federal Rules "when it is entered in the civil docket." Fed.R.Civ.P. 58(b)(2); *see, e.g., Yaretsky v. Blum,* 592 F.2d 65, 66 (2d Cir.1979) (per curiam) ("Under ... Fed.R.Civ.P. 58 ... the date of the entry in the docket, not the date of the order, begins the running of time for post-trial motions and appeals."). Both the order of judgment itself and the docket sheet make clear that the order was entered on the docket sheet on October 7, 2003. Consequently, we begin counting the ten-day period on October 8, 2003—one day after entry of the judgment. *See* Fed.R.Civ.P. 6(a). Because Monday, October 13 was Columbus Day, it is excluded, as are the intermediate weekend days. *See id.* Thus, the last day within the ten-day period was October 22, 2003. *See id.* Because this is, in fact, the day that the City filed its motion, the motion was timely filed.

Consequently, we consider the City's arguments, beginning with its assertion that the amount of the lost wages award was not supported by the evidence. We need not decide whether the district court erred in concluding that the City had not adequately briefed this issue because we con-clude on the merits that the district court did not err in determining that the evidence supported the award.

The City argues that the lost wages award is excessive because it cannot be supported as either back pay, front pay, or a combination of the two. Back pay and front pay are the two categories into which awards of lost wages under Title VII generally fall. Back pay represents wages foregone from the time of discharge or other adverse action until entry of judgment. *Brock v. Casey Truck Sales, Inc.,* 839 F.2d 872, 879–80 (2d Cir.1988). As the Supreme Court has stated, "front pay is ... money awarded for lost compensation during the period between judgment and reinstatement or in lieu of reinstatement." *Pollard v. E.I. du Pont de Nemours & Co.,* 532 U.S. 843, 846, 121 S.Ct. 1946, 150 L.Ed.2d 62 (2001).

■ At trial, Broadnax testified that her annual income was approximately $70,000 and her annual pension benefit as a retiree was $36,000. The difference between Broadnax's pension and her income as a firefighter is thus $34,000 per year, or $2,833.33 per month. Because Broadnax retired on December 31, 2002 and the trial took place in October 2003, the back pay period ran for approximately ten months. Consequently, a back pay award of $28,333.33 was supported by the record.

■ The balance of the jury award for wage damages, $937,237.67, must then be supported as an award of front pay. Front pay is awarded under section 706(g) of the Civil Rights Act of 1964, which permits the court, upon a finding that an employer has unlawfully discriminated, to "order such affirmative action as may be appropriate," including but not limited to "reinstatement or hiring of employees, with or without back pay ... or any other equitable relief as the court deems appropriate." 42 U.S.C. § 2000e–5(g)(1); *see*

*Pollard,* 532 U.S. at 853, 121 S.Ct. 1946 ("[B]ackpay awards made for the period between the date of judgment and the date of reinstatement, which today are called front pay awards under Title VII, were authorized under § 706(g)."). The award of front pay in this case required evidence sufficient to support the conclusion that reinstatement was "not viable because of continuing hostility between the plaintiff and the employer or its workers." *Pollard,* 532 U.S. at 846, 121 S.Ct. 1946. The district court's jury instructions did not inform the jury of this requirement. However, the City did not object to this omission, and does not argue on appeal that the jury award of front pay should be faulted on this basis. Consequently, this issue is waived. In any event, there was sufficient evidence for the jury to conclude that reinstatement was not viable. Broadnax's testimony that she left the fire department because she "couldn't take it anymore," along with the fact that she would be returning to a department that believed she violated her co-workers' confidences, and that had attempted to terminate her, afforded a sufficient basis for concluding that reinstatement was not a realistic option.

We turn now to the thrust of the City's argument concerning the wages award, which is that the amount of the wages award that we must deem to have been front pay—$937,237.67—was excessive because it was not supported by the evidence. Essentially, given the annual difference between her pension and her income as a firefighter, the question is whether the district court erred in not vacating an award of front pay extending until Broadnax reaches retirement age.

In *Padilla v. Metro–North Commuter Railroad,* 92 F.3d 117 (2d Cir.1996), this Court addressed this very issue under facts similar to the present case, and we concluded that an award of front pay through retirement age was not excessive. In *Padilla,* the plaintiff had been demoted from superintendent of train operations to dispatcher and consequently suffered a decrease in his salary. In fashioning an equitable remedy for the plaintiff, the district court awarded the plaintiff front pay based on the difference between his salary before and after his demotion over the period of time from the entry of judgment until the plaintiff reached retirement age, at which time he would receive his full pension. *Id.* at 121–22. The defendant argued that this award was inappropriate because its duration of more than twenty years was excessive. *Id.* at 125–26. We disagreed and found convincing the district court's conclusion that front pay until retirement age "was necessary because there was 'no convincing evidence that Padilla, now in his forties ..., would be able to find work commensurate with his skills at a salary equal to what he received'" before his demotion. *Id.* at 126 (quoting *Padilla v. Metro–North Commuter R.R.,* 88 Civ. 8659(LMM), 1995 WL 431324, 1995 U.S. Dist. LEXIS 10169, at *4 (S.D.N.Y. July 21, 1995)). We further observed that the plaintiff had only a high school education and that "his vocational experience [had] been confined primarily to serving as a dispatcher and a supervisor of dispatchers in the railroad industry." *Id.* Finally, we noted that the plaintiff had been able to obtain his pre-demotion salary "by developing these unique and narrowly focused skills, and it [was] very unlikely that he [would] be able to find alternative employment" for the same salary. *Id.*

As in *Padilla,* no evidence in the record suggests that Broadnax would be able to find work at a salary level commensurate with her pre-termination salary. Like that of the plaintiff in *Padilla,* Broadnax's educational background was limited; although

Broadnax took some college classes after graduating from high school, she never received a college degree. Moreover, Broadnax's vocational experience had similarly been limited—in this case to work in firefighting and emergency rescue—so that the jury could have reasonably concluded that she had attained her pre-termination salary based on the development of specialized firefighting and emergency rescue skills. Thus, just as the record in *Padilla* adequately supported the conclusion that the plaintiff would continue working through retirement, the record here supports the jury's conclusion that Broadnax, a 42–year old at the time of trial, would have continued to earn $34,000 per year in additional income through retirement age.

For these reasons, we cannot conclude that there existed " 'such a complete absence of evidence supporting the' " lost wages award "that the jury's findings could only have been the result of sheer surmise and conjecture,' " or that the evidence was "so overwhelming 'that reasonable and fair minded [persons] could not arrive at a verdict against' " the City. *Luciano v. Olsten Corp.*, 110 F.3d 210, 214 (2d Cir.1997) (quoting *Cruz v. Local Union No. 3 of the Int'l Bhd. of Elec. Workers*, 34 F.3d 1148, 1154 (2d Cir.1994)). Consequently, the district court did not err in declining to grant the City judgment as a matter of law under Rule 50(b). Moreover, for the same reasons, the district court did not abuse its discretion under Rule 59(a) in declining to grant a new trial on the issue of damages. The jury had not " 'reached a seriously erroneous result' " in awarding front pay through retirement age, nor was such an award " 'a miscarriage of justice.' " *Song v. Ives Labs., Inc.*, 957 F.2d 1041, 1047 (2d Cir.1992) (quoting *Smith v. Lightning Bolt Prods., Inc.*, 861 F.2d 363, 370 (2d Cir.1988)).

■ The City's second argument that we consider here is that the front-pay award must be vacated because the district court failed to instruct the jury in adequate detail regarding the factors to consider in determining an appropriate amount of front pay. Here, although the district court did not give the jury specific instructions concerning factors to use in analyzing front pay, the court did instruct the jury as follows: "You have to apply sound judgment, common sense, in reaching the proper amount of damages, however, there must be evidence to establish damages. You may not speculate, guess, or infer damages. You may not do that."

The City failed to object to the instructions on this basis. The City cites an instance during the charge conference, in which it objected to language used by counsel for Broadnax during his closing argument. Counsel for Broadnax had commented that "[t]he law does not permit me to ask you for punitive damages in this case," but added that "[t]he remedy we're asking you for is restoration of a dream, and I'll ask you for a substantial sum of money. I don't think walking out of here with six or seven figures is enough." During the charge conference, counsel for the City argued that seeking damages based on "a dream denied" was improper and requested that "as part of your closing instructions when they get to damages, that you indicate that that's not compensable." Counsel for the City further argued that counsel for Broadnax "was arguing that for the next forty-two years she's had this dream denied and should be—she should be compensated for that," adding that "there's no damages for that. A dream denied." Counsel for the City concluded, "I think it's an improper argument. I've made my record." These quotations make clear that the focus of this objection was on the comment by counsel for Broad-

nax that the jury should base its award in part on his client's loss of her dream. In no way, however, did this objection put the district court on notice that the City was claiming the instructions should more specifically inform the jury of the factors to consider in making an award of front-pay damages.

Because the City failed to object to the jury charge, it would have to demonstrate plain error to obtain judgment as a matter of law or a new trial based on the lack of specific instructions concerning what factors to consider in determining front pay. Fed.R.Civ.P. 51(d)(2); *see also Rothstein v. Carriere,* 373 F.3d 275, 291 (2d Cir. 2004). This would require showing that the error "may result in a miscarriage of justice, or in 'obvious instances of . . . misapplied law.'" *Metromedia Co. v. Fugazy,* 983 F.2d 350, 363 (2d Cir.1992) (quoting *City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 256, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981)) (alteration in original). Here, where the fundamental principle to be applied was simple—if Broadnax lost compensation due to her termination, she was entitled to damages—we cannot conclude that the district court's instruction to the jury to calculate Broadnax's damages based on the evidence presented meets the plain error standard.

█ Finally, the City argues that the jury award should be reduced based on the Title VII statutory cap on compensatory and punitive damages. The jury awarded Broadnax compensatory damages apart from the lost wages award, including $1 for gender discrimination, $90,000 in compensatory damages for a hostile work environment, and $341,200 for retaliation. The City argues that this total amount of $431,201 falls under the cap on compensatory and punitive damages in 42 U.S.C. § 1981a, and hence should be reduced to $300,000. However, the City acknowl-

edges that it did not raise this issue in front of the district court. "A party seeking to overturn the decision of a trial court may not ordinarily obtain review of an issue not raised below." *Mycak v. Honeywell, Inc.,* 953 F.2d 798, 803 (2d Cir.1992). This bar to raising new issues "may be overcome only when necessary to avoid manifest injustice." *Schmidt v. Polish People's Republic,* 742 F.2d 67, 70 (2d Cir.1984).

Section 1981a permits a party asserting a variety of discrimination claims, including those based on race or sex, or retaliatory discrimination, to obtain compensatory damages in addition to those damages permitted by section 706(g) of the Civil Rights Act of 1964. Although, as described *supra,* section 706(g) is the basis for awards of front pay and back pay, section 1981a permits awards for "emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses." 42 U.S.C. § 1981a(b)(3), *see Robinson v. Metro–North Commuter R.R.,* 267 F.3d 147, 160 (2d Cir.2001) (citing section 1981a(b)(3) for the proposition that plaintiffs "who seek compensatory damages in addition to . . . equitable relief must then prove that the discrimination caused them 'emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of·life, other nonpecuniary losses.' ").

Section 1981a also limits the total amount that can be awarded under the section. It states that "[t]he sum of the amount of compensatory damages awarded under this section for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses, and the amount of punitive damages awarded under this section, shall not exceed" an amount that is determined based on the

number of employees working for the employer. § 1981a(b)(3).

Because the City has more than 500 employees, the City acknowledges that the relevant cap is the highest one—$300,000. *See* § 1981a(b)(3)(D). The City thus argues that section 1981a(b)(3) requires that the total compensatory damages award of $431,201 for discrimination based on race and/or sex and retaliatory discrimination be reduced to $300,000. Broadnax acknowledges that the total compensatory damages awarded under Title VII must not exceed $300,000, but argues that here, the jury specifically noted on its special verdict form that the $341,200 award for retaliation was duplicative of the $341,200 award for violating her free speech rights. Broadnax thus claims that the jury only awarded $90,001 *solely* for Title VII violations, and no reduction of the award is necessary.

In *Greenway v. Buffalo Hilton Hotel*, 143 F.3d 47 (2d Cir.1998), the jury had awarded the plaintiff $439,000 in compensatory damages and $1 million in punitive damages. *Id.* at 49. The district court had reduced the punitive damages award to $200,000 pursuant to section 1981a(b)(3). *Id.* at 50. This court commented that the cap provision "affected only Greenway's award for punitive damages because the New York Human Rights Law, which does not allow punitive damages, places no limit on the amount of compensatory damages." *Id.* at 50 n. 1 (internal citation omitted). This makes clear that where a compensatory damages award can be allocated either to a violation subject to the section 1981a(b)(3) cap, or to a violation not subject to the cap, a district court is permitted to allocate the award entirely to the violation not subject to the cap. Thus, the district court in this case would have been acting within its discretion had it decided to allocate the $341,200 award entirely to

the free speech claim. Assuming the district court did so, only $90,001 in compensatory damages would have been allocable to Title VII violations. Consequently, we do not believe that failing to reduce the award pursuant to section 1981a(b)(3) was manifest injustice, and conclude that this unpreserved claim should be denied.

We have considered all the City's arguments and find them to be without merit.

Accordingly, the judgment of the district court is **AFFIRMED.**