**Samuel CULPEPPER, Plaintiff-Appellee-Cross-Appellant,**

v.

**REYNOLDS METALS COMPANY, Defendant-Appellant-Cross-Appellee.**

No. 30678.

United States Court of Appeals, Fifth Circuit.

May 7, 1971.

William M. Pate, Atlanta, Ga., Fred R. Edney, Richmond, Va., Mitchell, Pate & Anderson, Atlanta, Ga., for defendant-appellant.

Howard Moore, Jr., Peter E. Rindskopf, Atlanta, Ga., Jack Greenberg, William Robinson, New York City, for plaintiff-appellee.

Stanley P. Hebert, Gen. Counsel, Julia P. Cooper, Chief, Appellate Section, Vincent A. Fuller, Jr., Marian Halley,

Attys., Equal Employment Opportunity Comm., Washington, D. C., for amicus curiae.

Before THORNBERRY and GODBOLD, Circuit Judges, and BOOTLE, District Judge.

BOOTLE, District Judge.

Samuel Culpepper filed his complaint in the court below against his employer, Reynolds Metals Company, seeking injunctive relief pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., enjoining said employer from continuing or maintaining any policy, practice, custom and usage of denying or interfering with the right of plaintiff to equal employment opportunities on the basis of race or color. Jurisdiction was invoked also under 42 U.S.C. § 1981 providing for equal rights of all persons within the jurisdiction of the United States. The complaint sought also a declaratory judgment and sought relief not only for Culpepper but for the class he claimed to represent. The trial court, after holding a full evidentiary hearing, denied all relief sought, holding, inter alia: (1) that under Title VII appellant's claim must be dismissed for failure to file timely charges with the Equal Employment Opportunity Commission; (2) that under Title VII the court does not have the power to grant a preliminary injunction to an individual litigant, and (3) that a claim for relief against purely private racial discrimination in employment could not be predicated on 42 U.S.C. § 1981. For the trial court's opinion, see Culpepper v. Reynolds Metals Company, D.C., 296 F.Supp. 1232 (1969). On appeal this court reversed the trial court as to holdings (1) and (2), and did not reach the issue with respect to 42 U.S.C. § 1981. Culpepper v. Reynolds Metals Company, 421 F.2d 888 (1970). The case was remanded for further proceedings. The retrial in the court below was conducted by agreement almost entirely upon the evidence adduced at the first trial. The evidence will not be restated here because it appears fully in the two cases above cited. The only additional evidence was a photograph of a "slitter machine" used in the job position, promotion to which Culpepper had unsuccessfully sought, and answers to interrogatories propounded to the employer.[1]

---

1. Those interrogatory answers disclosed that Culpepper was given the title and rate of slitter operator on January 27, 1969 (30 days after the trial court originally denied relief); that the position of slitter operator was not then bulletined; that "plaintiff was selected for this position because of the pendency of the present case and plaintiff's (defendant's) wish to end the controversy. For these reasons defendant decided to train plaintiff on the job despite his disqualification upon trial in 1963. After assignment to this position plaintiff actually worked as a helper but received the slitter operator's rate of pay and was given instruction and allowed to operate the slitter under the direction of the regular slitter operator." Int. "Has the plaintiff been determined qualified to occupy the position?" Ans. "Yes, with the exception that he cannot set the knives, spacers and shims without help from the foreman or the regular slitter operator." Int. "If plaintiff has been determined to be qualified, when was he determined to be qualified and by whom?" Ans. "Plaintiff worked on the machine only with the regular slitter operator until June 16, 1969, when the regular slitter operator went on vacation. Plaintiff operated the slitter during the week beginning June 16, 1969, and was at that time deemed qualified by W. H. Anderson with the concurrence of Marion L. Peek. After that week plaintiff continued to work as a helper with the regular slitter operator while receiving the slitter operator's rate of pay, with the exception of two additional weeks in 1969, when the regular slitter operator was on vacation, and another period of approximately two weeks in 1969 when two shifts were operating. In these latter periods, aggregating approximately four weeks, plaintiff operated the slitter in the absence of the regular slitter operator. Plaintiff again began work as a slitter operator without the presence of the regular slitter operator on April 16, 1970, when a second shift was again temporarily instituted. The second shift is still in operation at the present time." Int. "If plaintiff had not been determined to be qualified, what is the reason that he has not been determined to be qualified?" Ans. "No answer required."

At the conclusion of this second trial the court entered its "Order of Judgment" containing its findings of fact and conclusions of law and ordering that plaintiff recover the sum of $156.00 in back pay, the sum of $1500.00 attorneys' fees, and costs. From that judgment each party has appealed.

Reynolds' direct appeal challenges these awards, claiming that under the facts as found by the district judge there was no discrimination based on race, hence no violation of Title VII, and that judgment should have gone for Reynolds. Culpepper's cross-appeal challenges the attorneys' fees award as being so inadequate as to require an upward modification. We sustain both awards against all attacks made and affirm as to both the direct appeal and cross-appeal.

## REYNOLDS' DIRECT APPEAL

This appeal is based not so much, if at all, upon any alleged inadequacy of the evidence to show discrimination because of race, but rather upon the contention that the district judge has made no finding of discrimination based on race, and upon the further contention that the facts as found by the district judge would not support such a finding, if made. We disagree.

 While there could have been more explicit, specific and detailed findings of fact, Rule 52, Federal Rules of Civil Procedure, says: "If an opinion or memorandum of decision is filed, it will be sufficient if the findings of fact and conclusions of law appear therein", thus happily dispensing with the necessity of formalistic and stereotyped findings. Looking at the four corners of the Order of Judgment, we deem its findings and conclusions legally sufficient and their intendment sufficiently clear. The able and conscientious district judge, facing up to the ordeal of decision in this case and fully aware of the factual problems and legal principles involved, characterized the decision he was about to make as "another close question involving the nebulous question of implied intent", citing his then 42-day-old decision in Colbert v. H–K Corporation, D.C., 295 F. Supp. 1091 (1970) another EEOC case in which he had stated "the issues involved in a determination of this question (discrimination in fact) depend upon somewhat nebulous inferences on both sides and as such constitute difficult decisions. * * * The burden of persuasion is on the plaintiff and the court is concerned about the difficulty often inherent therein. Normally, it can be aided by an overall statistical showing but in a limited case such as this it is dependent upon inferences of motive, intent and state of mind often from very slight circumstances. For claimant and counsel, this is not an easy task. In such instances, all a court can do is evaluate these intangibles through the witnesses and weigh the overall situation and performance of the employer. On balance, the evidence preponderates toward the company here. Accordingly, the court must find for defendant."

Then in the Order of Judgment in the case at bar, the court continued: "At the trial, the court was and still is of the opinion that the personal problems of Culpepper more properly lay in the area of labor-management relations than under Title VII and that the case was a weak showing of racial motivation against him in the face of a general finding of non-discriminatory policies by the company (Tr. 320a–332a). Meanwhile, United States v. Local 189 [Local 189, United Papermakers and Paper-Workers v. United States], 416 F.2d 980 (5th Cir., July 28, 1969) and its opening of the Pandora's box of all pre-1965 happenings intervened. While the court erroneously construed the effect of pre-1965 actions, the case nevertheless remains tenuous."

The court then rejected Culpepper's contention that his 1963 test was a "sham" and held that Culpepper failed to qualify upon that test. In the same breath, he continued: "The court has consistently felt that a previous failure to qualify (1963) ought not to bar a

worker forever (1967) from bidding the same or a similar job." Noting, however, that the plaintiff had failed to prove that the employer had ever allowed white workers a second opportunity to qualify, the court narrowed the claim to a "technical one based on the following elements:

"(1) Plaintiff was denied the opportunity to bid in 1962 in violation of the collective bargaining contract and a junior white worker was allowed to do so.

"(2) In 1967, plaintiff was again denied the bid in favor of a junior white worker, Collins.

"(3) In 1967, the company failed to compare present qualifications between plaintiff and the white worker, but relied solely on a four-year old failure of plaintiff to qualify in 1963.

"(4) No Negro worker had ever held the position of slitter-operator (However, Culpepper was the only Negro to bid it.) plus disputed testimony that the foreman intended to keep the job 'white'. (Ennis v. Peek)."

The court then continued: "The apparent bona fides in connection with the 1963 test failure negate the effect of (1) and (2) except for their possible inferences on (3) and (4). * * * Consequently, the case resolves, in the main, to a narrow claim that the failure to compare present qualifications between a Negro and white worker in 1967 before granting the bid *ipso facto* constituted Title VII discrimination."

Then followed the decision itself, the jury verdict so to speak.

"[T]he court has consistently indicated that the failure to retest was basically 'unfair'. Under such circumstances, and in the *Local 189* context of elements (1), (2), and (4), the court is constrained to conclude that this failure (element (3)) constitutes a technical violation of Title VII.[2] (2. In the event of appeal, the court

wishes to make it clear that this is the sole basis for the holding.) Without deprecating the defendants' altogether commendable record heretofore found in the area of equal employment opportunity, the court, therefore, finds for plaintiff."

The fact that the word "technical" rather than a word like "egregious" (and this is not to suggest that the latter word should have been used) was used to characterize the violation judicially found and determined cannot be permitted to nullify the finding so made and determined. Nor can such effect be ascribed to the trial court's desire not to deprecate the defendant's "altogether commendable record heretofore found in the area of equal employment opportunity." The situation here is not unlike that of a conscientious jury, properly instructed, finding it somewhat difficult correctly to analyze the evidence and arrive at a verdict. The fact, however, that the jury encounters such difficulty does not detract from the validity of a verdict where the jury is properly instructed and where the evidence, as in this case,[2] fully supports the verdict.

## CULPEPPER'S CROSS APPEAL

The award of attorneys' fees in the amount of $1500.00 is explained by a footnote to the judgment as follows: "In view of the recovery, this sum appears inordinate. However, plaintiff's counsel had the burden of the earlier appeal." Thus, while the amount of the award was sufficiently large that the trial judge thought it needed explanation, the plaintiff by cross appeal here attacks it as being inadequate. Determination of the reasonableness of attorneys' fees is a matter which is left to the sound discretion of the trial judge. Electronics Capital Corp. v. Sheperd, 5 Cir., 1971, 439 F.2d 692, and cases cited. It cannot be said that this award constituted a clear abuse of discretion. We affirm as to the award and as to its

2. While the district judge preferred one witness over another, the plaintiff's case did not depend upon the testimony of the witness not preferred.

amount. The trial court, upon timely application, will allow an appropriate additional amount for defending the award, but not for challenging its amount, in this court.

Accordingly, the judgment appealed from is affirmed in all respects, both as to the direct appeal and as to the cross appeal. The Clerk of this court will tax against Reynolds the costs of its direct appeal and against Culpepper the costs of his cross appeal.

Gibbons, Circuit Judge, dissented and filed opinion.