POLLARD *v.* E. I. DU PONT DE NEMOURS & CO.

No. 00–763.  Argued April 23, 2001—Decided June 4, 2001

*Kathleen L. Caldwell* argued the cause for petitioner. With her on the briefs was *Eric Schnapper.*

*Matthew D. Roberts* argued the cause for the United States et al. as *amici curiae* urging reversal. With him on the brief were *Acting Solicitor General Underwood, Acting Assistant Attorney General Yeomans, Austin C. Schlick, Dennis J. Dimsey, Jennifer Levin, Gwendolyn Young Reams, Phillip B. Sklover, Carolyn L. Wheeler,* and *Caren I. Friedman.*

*Raymond Michael Ripple* argued the cause for respondent. With him on the brief was *Donna L. Goodman.**

JUSTICE THOMAS delivered the opinion of the Court.

This case presents the question whether a front pay award is an element of compensatory damages under the Civil Rights Act of 1991. We conclude that it is not.

## I

Petitioner Sharon Pollard sued her former employer, E. I. du Pont de Nemours and Company (DuPont), alleging that she had been subjected to a hostile work environment based on her sex, in violation of Title VII of the Civil Rights Act of 1964, 78 Stat. 253, 42 U. S. C. § 2000e *et seq.* After a trial, the District Court found that Pollard was subjected to co-worker sexual harassment of which her supervisors were aware. The District Court further found that the harassment resulted in a medical leave of absence from her job for psychological assistance and her eventual dismissal for refusing to return to the same hostile work environment. The court awarded Pollard $107,364 in backpay and benefits, $252,997 in attorney's fees, and, as relevant here, $300,000 in compensatory damages—the maximum permitted under the statutory cap for such damages in 42 U. S. C. § 1981a(b)(3).

---

*Briefs of *amici curiae* urging reversal were filed for the Lawyers' Committee for Civil Rights Under Law et al. by *Richard M. Wyner, Matthew M. Hoffman, Charles T. Lester, Jr., John Payton, Norman Redlich, Barbara R. Arnwine, Thomas J. Henderson, Steven R. Shapiro, Lenora M. Lapidus, Sara L. Mandelbaum, Marcia D. Greenberger, Judith L. Lichtman, Donna R. Lenhoff, Martha F. Davis, Karen K. Narasaki, Vincent A. Eng, Mark D. Roth,* and *Laurie A. McCann;* and for the National Employment Lawyers Association et al. by *Woodley B. Osborne, H. Candace Gorman,* and *Paula A. Brantner.*

Briefs of *amici curiae* urging affirmance were filed for the Equal Employment Advisory Council et al. by *Robert E. Williams, Ann Elizabeth Reesman, Stephen A. Bokat,* and *Robin S. Conrad;* and for the Society for Human Resource Management by *Paul Salvatore.*

The Court of Appeals affirmed, concluding that the record demonstrated that DuPont employees engaged in flagrant discrimination based on sex and that DuPont managers and supervisors did not take adequate steps to stop it. 213 F. 3d 933 (CA6 2000).

The issue presented for review here is whether front pay constitutes an element of "compensatory damages" under 42 U. S. C. § 1981a and thus is subject to the statutory damages cap imposed by that section. Although courts have defined "front pay" in numerous ways, front pay is simply money awarded for lost compensation during the period between judgment and reinstatement or in lieu of reinstatement. For instance, when an appropriate position for the plaintiff is not immediately available without displacing an incumbent employee, courts have ordered reinstatement upon the opening of such a position and have ordered front pay to be paid until reinstatement occurs. See, *e. g., Walsdorf* v. *Board of Comm'rs,* 857 F. 2d 1047, 1053–1054 (CA5 1988); *King* v. *Staley,* 849 F. 2d 1143, 1145 (CA8 1988). In cases in which reinstatement is not viable because of continuing hostility between the plaintiff and the employer or its workers, or because of psychological injuries suffered by the plaintiff as a result of the discrimination, courts have ordered front pay as a substitute for reinstatement. See, *e. g., Gotthardt* v. *National R. R. Passenger Corp.,* 191 F. 3d 1148, 1156 (CA9 1999); *Fitzgerald* v. *Sirloin Stockade, Inc.,* 624 F. 2d 945, 957 (CA10 1980). For the purposes of this opinion, it is not necessary for us to explain when front pay is an appropriate remedy. The question before us is only whether front pay, if found to be appropriate, is an element of compensatory damages under the Civil Rights Act of 1991 and thus subject to the Act's statutory cap on such damages.

Here, the District Court observed that "the $300,000.00 award is, in fact, insufficient to compensate plaintiff," 16 F. Supp. 2d 913, 924, n. 19 (WD Tenn. 1998), but it stated that

it was bound by the Sixth Circuit's decision in *Hudson* v. *Reno*, 130 F. 3d 1193 (1997), which held that front pay was subject to the cap. On appeal, Pollard argued that *Hudson* was wrongly decided because front pay is not an element of compensatory damages, but rather a replacement for the remedy of reinstatement in situations in which reinstatement would be inappropriate. She also argued that § 1981a, by its very terms, explicitly excludes from the statutory cap remedies that traditionally were available under Title VII, which she argued included front pay. The Court of Appeals agreed with Pollard's arguments but considered itself bound by *Hudson*. The Sixth Circuit declined to rehear the case en banc.

The Sixth Circuit's decision in *Hudson* was one of the first appellate opinions to decide whether front pay is an element of compensatory damages subject to the statutory cap set forth in § 1981a(b)(3). Contrary to the Sixth Circuit's resolution of this question, the other Courts of Appeals to address it have concluded that front pay is a remedy that is not subject to the limitations of § 1981a(b)(3). See, *e. g., Pals* v. *Schepel Buick & GMC Truck, Inc.*, 220 F. 3d 495, 499–500 (CA7 2000); *Kramer* v. *Logan County School Dist. No. R–1*, 157 F. 3d 620, 625–626 (CA8 1998); *Gotthardt, supra*, at 1153–1154; *Medlock* v. *Ortho Biotech, Inc.*, 164 F. 3d 545, 556 (CA10 1999); *EEOC* v. *W&O, Inc.*, 213 F. 3d 600, 619, n. 10 (CA11 2000); *Martini* v. *Federal Nat. Mortgage Assn.*, 178 F. 3d 1336, 1348–1349 (CADC 1999). We granted certiorari to resolve this conflict. 531 U. S. 1069 (2001).

## II

Plaintiffs who allege employment discrimination on the basis of sex traditionally have been entitled to such remedies as injunctions, reinstatement, backpay, lost benefits, and attorney's fees under § 706(g) of the Civil Rights Act

of 1964. 42 U. S. C. § 2000e–5(g)(1). In the Civil Rights Act of 1991, Congress expanded the remedies available to these plaintiffs by permitting, for the first time, the recovery of compensatory and punitive damages. 42 U. S. C. § 1981a(a)(1) ("[T]he complaining party may recover compensatory and punitive damages as allowed in subsection (b) of this section, in addition to any relief authorized by section 706(g) of the Civil Rights Act of 1964"). The amount of compensatory damages awarded under § 1981a for "future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses," and the amount of punitive damages awarded under § 1981a, however, may not exceed the statutory cap set forth in § 1981a(b)(3). The statutory cap is based on the number of people employed by the respondent. In this case, the cap is $300,000 because DuPont has more than 500 employees.

The Sixth Circuit has concluded that front pay constitutes compensatory damages awarded for future pecuniary losses and thus is subject to the statutory cap of § 1981a(b)(3). 213 F. 3d, at 945; *Hudson, supra,* at 1203. For the reasons discussed below, we conclude that front pay is not an element of compensatory damages within the meaning of § 1981a, and, therefore, we hold that the statutory cap of § 1981a(b)(3) is inapplicable to front pay.

## A

Under § 706(g) of the Civil Rights Act of 1964 as originally enacted, when a court found that an employer had intentionally engaged in an unlawful employment practice, the court was authorized to "enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay." 42 U. S. C. § 2000e–5(g)(1). This provision closely tracked the language of

§ 10(c) of the National Labor Relations Act (NLRA), 49 Stat. 454, 29 U. S. C. § 160(c), which similarly authorized orders requiring employers to take appropriate, remedial "affirmative action." § 160(c) (authorizing the National Labor Relations Board to issue an order "requiring such person to cease and desist from such unfair labor practice, and to take such affirmative action including reinstatement of employees with or without back pay, as will effectuate the policies of this subchapter"). See also *Albemarle Paper Co.* v. *Moody*, 422 U. S. 405, 419, n. 11 (1975). The meaning of this provision of the NLRA prior to enactment of the Civil Rights Act of 1964, therefore, gives us guidance as to the proper meaning of the same language in § 706(g) of Title VII. In applying § 10(c) of the NLRA, the Board consistently had made awards of what it called "backpay" up to the date the employee was reinstated or returned to the position he should have been in had the violation of the NLRA not occurred, even if such event occurred after judgment. See, *e. g.*, *Nathanson* v. *NLRB*, 344 U. S. 25, 29–30 (1952); *NLRB* v. *Reeves Broadcasting & Development Corp.*, 336 F. 2d 590, 593–594 (CA4 1964); *NLRB* v. *Hill & Hill Truck Line, Inc.*, 266 F. 2d 883, 887 (CA5 1959); *Berger Polishing, Inc.*, 147 N. L. R. B. 21, 40 (1964); *Lock Joint Pipe Co.*, 141 N. L. R. B. 943, 948 (1963). Consistent with the Board's interpretation of this provision of the NLRA, courts finding unlawful intentional discrimination in Title VII actions awarded this same type of backpay under § 706(g). See, *e. g.*, *Culpepper* v. *Reynolds Metals Co.*, 442 F. 2d 1078, 1080 (CA5 1971); *United States* v. *Georgia Power Co.*, 3 FEP Cases 767, 790 (ND Ga. 1971). In the Title VII context, this form of "backpay" occurring after the date of judgment is known today as "front pay."

In 1972, Congress expanded § 706(g) to specify that a court could, in addition to awarding those remedies previously listed in the provision, award "any other equitable relief

as the court deems appropriate." After this amendment to § 706(g), courts endorsed a broad view of front pay. See, *e. g., Patterson* v. *American Tobacco Co.*, 535 F. 2d 257, 269 (CA4 1976) (stating that where reinstatement is not immediately feasible, backpay "should be supplemented by an award equal to the estimated present value of lost earnings that are reasonably likely to occur between the date of judgment and the time when the employee can assume his new position"); *EEOC* v. *Enterprise Assn. Steamfitters*, 542 F. 2d 579, 590 (CA2 1976) (stating that backpay award would terminate on the date of actual remedying of discrimination); *Bush* v. *Lone Star Steel Co.*, 373 F. Supp. 526, 538 (ED Tex. 1974) (ordering backpay from the date the employee would have been entitled to fill a vacancy but for racial discrimination to the date the employee would in all reasonable probability reach his rightful place). Courts recognized that reinstatement was not always a viable option, and that an award of front pay as a substitute for reinstatement in such cases was a necessary part of the "make whole" relief mandated by Congress and by this Court in *Albemarle*. See, *e. g., Shore* v. *Federal Express Corp.*, 777 F. 2d 1155, 1158–1159 (CA6 1985) ("Front pay is . . . simply compensation for the post-judgment effects of past discrimination." It is awarded "to effectuate fully the 'make whole' purposes of Title VII"); *Brooks* v. *Woodline Motor Freight, Inc.*, 852 F. 2d 1061, 1066 (CA8 1988) (stating that front pay was appropriate given substantial animosity between parties where "the parties' relationship was not likely to improve, and the nature of the business required a high degree of mutual trust and confidence"); *Fitzgerald* v. *Sirloin Stockade, Inc.*, 624 F. 2d, at 957 (upholding award of front pay where continuing hostility existed between the parties); *Cassino* v. *Reichhold Chems., Inc.*, 817 F. 2d 1338, 1347 (CA9 1987) (same). By 1991, virtually all of the courts of appeals had recognized that "front pay" was a remedy authorized

under § 706(g).[1]  In fact, no court of appeals appears to have ever held to the contrary.[2]

In 1991, without amending § 706(g), Congress further expanded the remedies available in cases of intentional employment discrimination to include compensatory and punitive damages.  See 42 U. S. C. § 1981a(a)(1).  At that time, Rev. Stat. § 1977, 42 U. S. C. § 1981, permitted the recovery of unlimited compensatory and punitive damages in cases of intentional race and ethnic discrimination, but no similar remedy existed in cases of intentional sex, religious, or disability discrimination.  Thus, § 1981a brought all forms of intentional employment discrimination into alignment, at least with respect to the forms of relief available to successful plaintiffs.  However, compensatory and punitive damages awarded under § 1981a may not exceed the statutory limitations set forth in § 1981a(b)(3), while such damages awarded under § 1981 are not limited by statute.

---

[1] See, e. g., Barbano v. Madison Cty., 922 F. 2d 139, 146–147 (CA2 1990); Blum v. Witco Chem. Corp., 829 F. 2d 367, 383 (CA3 1987); Patterson v. American Tobacco Co., 535 F. 2d 257, 269 (CA4 1976); Walsdorf v. Board of Comm'rs, 857 F. 2d 1047, 1054 (CA5 1988); Shore v. Federal Express Corp., 777 F. 2d 1155, 1159–1160 (CA6 1985); Briseno v. Central Technical Community College Area, 739 F. 2d 344, 348 (CA8 1984); Thorne v. El Segundo, 802 F. 2d 1131, 1137 (CA9 1986); Fitzgerald v. Sirloin Stockade, Inc., 624 F. 2d 945, 957 (CA10 1980); Nord v. United States Steel Corp., 758 F. 2d 1462, 1473–1474 (CA11 1985); Thompson v. Sawyer, 678 F. 2d 257, 292 (CADC 1982).  See also McKnight v. General Motors Corp., 908 F. 2d 104, 116–117 (CA7 1990) (reserving question of availability of front pay under Title VII); Wildman v. Lerner Stores Corp., 771 F. 2d 605, 615–616 (CA1 1985) (holding that front pay is available under the Age Discrimination in Employment Act of 1967, but relying on Title VII case law).

[2] The only two Courts of Appeals not to have addressed this issue prior to the Civil Rights Act of 1991 have since joined the other Circuits in holding that front pay is a remedy available under § 706(g).  See Selgas v. American Airlines, Inc., 104 F. 3d 9, 12–13 (CA1 1997); Williams v. Pharmacia, Inc., 137 F. 3d 944, 951–952 (CA7 1998).

## B

In the abstract, front pay could be considered compensation for "future pecuniary losses," in which case it would be subject to the statutory cap. §1981a(b)(3). The term "compensatory damages . . . for future pecuniary losses" is not defined in the statute, and, out of context, its ordinary meaning could include all payments for monetary losses after the date of judgment. However, we must not analyze one term of §1981a in isolation. See *Gade* v. *National Solid Wastes Management Assn.*, 505 U. S. 88, 99 (1992) (" '[W]e must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law' "). When §1981a is read as a whole, the better interpretation is that front pay is not within the meaning of compensatory damages in §1981a(b)(3), and thus front pay is excluded from the statutory cap.

In the Civil Rights Act of 1991, Congress determined that victims of employment discrimination were entitled to *additional* remedies. Congress expressly found that "additional remedies under Federal law are needed to deter unlawful harassment and intentional discrimination in the workplace," without giving any indication that it wished to curtail previously available remedies. See Civil Rights Act of 1991, 105 Stat. 1071, §2. Congress therefore made clear through the plain language of the statute that the remedies newly authorized under §1981a were *in addition to* the relief authorized by §706(g). Section 1981a(a)(1) provides that, in intentional discrimination cases brought under Title VII, "the complaining party may recover compensatory and punitive damages as allowed in subjection (b) of [§1981a], *in addition to any relief authorized by section 706(g) of the Civil Rights Act of 1964*, from the respondent." (Emphasis added.) And §1981a(b)(2) states that "[c]ompensatory damages awarded under [§1981a] shall not include backpay, interest on backpay, *or any other type of relief authorized under section 706(g) of the Civil Rights Act of 1964.*"

(Emphasis added.) According to these statutory provisions, if front pay was a type of relief authorized under § 706(g), it is excluded from the meaning of compensatory damages under § 1981a.

As discussed above, the original language of § 706(g) authorizing backpay awards was modeled after the same language in the NLRA. This provision in the NLRA had been construed to allow awards of backpay up to the date of reinstatement, even if reinstatement occurred after judgment. Accordingly, backpay awards made for the period between the date of judgment and the date of reinstatement, which today are called front pay awards under Title VII, were authorized under § 706(g).

As to front pay awards that are made in lieu of reinstatement, we construe § 706(g) as authorizing these awards as well. We see no logical difference between front pay awards made when there eventually is reinstatement and those made when there is not.[3] Moreover, to distinguish between the two cases would lead to the strange result that employees could receive front pay when reinstatement eventually is available but not when reinstatement is not an option—whether because of continuing hostility between the plaintiff and the employer or its workers, or because of psychological injuries that the discrimination has caused the plaintiff. Thus, the most egregious offenders could be subject to the least sanctions. Had Congress drawn such a line in the statute and foreclosed front pay awards in lieu of reinstatement, we certainly would honor that line. But, as written, the text of the statute does not lend itself to such a distinction, and we will not create one. The statute

---

[3] We note that the federal courts consistently have construed § 706(g) as authorizing front pay awards in lieu of reinstatement. See, e. g., Blum v. Witco Chem. Corp., supra, at 383 ("A front pay . . . award is the monetary equivalent of the equitable remedy of reinstatement"); Williams v. Pharmacia, Inc., supra, at 952 (stating that "front pay is the functional equivalent of reinstatement").

authorizes courts to "order such affirmative action as may be appropriate." 42 U. S. C. §2000e–5(g)(1). We conclude that front pay awards in lieu of reinstatement fit within this statutory term.

Because front pay is a remedy authorized under §706(g), Congress did not limit the availability of such awards in §1981a. Instead, Congress sought to expand the available remedies by permitting the recovery of compensatory and punitive damages in addition to previously available remedies, such as front pay.

*    *    *

The judgment of the Court of Appeals is reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

JUSTICE O'CONNOR took no part in the consideration or decision of this case.