*821 TEXTO COMPLETO DE LA RESOLUCIÓN
La parte peticionaria, El Coquí San Juan y/o EC Waste Management, solicita que revisemos una resolución emitida por el Tribunal de Primera Instancia, Sala de San Juan, que determinó que debía pagarle a los dos empleados recurridos, como parte del cómputo de “front pay” o paga adeudada desde la sentencia hasta el día de su reinstalación, las horas extras que ellos hubieran trabajado de haber sido restituidos como ordenado.
Luego de examinar los méritos del recurso, resolvemos denegar la expedición del auto de certiorari solicitado.
I
El Coquí San Juan y/o EC Waste Management (Waste Management) despidió a los trabajadores René Castillo Ortiz y Ramón Acevedo Delgado. Inconformes, éstos incoaron una querella al amparo del procedimiento sumario establecido en la Ley 2 de 17 de octubre de 1961, 32 L.P.R.A. see. 3118 et seq., en la que también figuraron como recurridos sus esposas y sus respectivas sociedades legales de bienes gananciales. Los recurridos alegaron que Waste Management los despidió de su empleo injustificadamente, en contravención a lo establecido en la Ley 80 de 30 de mayo de 1978, 29 L.P.R.A. sec. 185(a) et seq. Además, incoaron una causa de acción bajo la Ley de Represalias, Ley 115 de 20 de diciembre de 2001, 29 L.P.R.A. see. 194 et seq., al alegar que el patrono los despidió por presentar una querella por riesgos de seguridad en su lugar de empleo ante la Oficina de Seguridad y Salud del Trabajo del Departamento del Trabajo y Recursos Humanos.
Waste Management contestó la querella y presentó como defensa afirmativa que los empleados querellantes fueron despedidos por justa causa, al haber infringido las normas de la empresa y al haber realizado su trabajo de forma deficiente y negligente.
Luego de celebrado el juicio, el Tribunal de Primera Instancia dictó la sentencia que declaró con lugar la demanda y ordenó reinstalar a los señores Castillo y Acevedo a sus respectivas posiciones. Además, ordenó el pago de los salarios dejados de percibir (back pay) hasta entonces, el pago de los salarios correspondientes hasta el día de su reinstalación (front pay), así como las siguientes cuantías en daños: $135,000 para el Sr. Castillo, $150,000 para el Sr. Acevedo, $155,000 para la Sra. Mercedes Rodríguez, esposa del Sr. Castillo, y $165,000 para la Sra. Carmen Agosto, esposa del Sr. Acevedo. El tribunal a quo dispuso que todas las cuantías concedidas en daños a los recurridos Castillo y Acevedo estaban sujetas a la doble penalidad que reconoce la ley.
Inconforme con la sentencia, Waste Management apeló de ella ante nos. Un panel hermano modificó la sentencia y redujo las cuantías en daños a $100,000 para la Sra. Mercedes Rodríguez y $105,000 para la Sra. Carmen Agosto. El foro apelativo también aclaró que la compensación concedida a éstas no estaba sujeta al *822 pago de doble penalidad, debido a que esa reclamación estaba fundamentada en el Artículo 1802 del Código Civil, 31 L.P.R.A. see. 5141, y no en las leyes laborales. Waste Management solicitó la reconsideráción del dictamen y adujo error al no descontarse en la sentencia la suma que el patrono les pagó a los recurridos por concepto de mesada. El foro apelatiyo acogió la solicitud de reconsideración y resolvió conforme a lo solicitado.
En el proceso de apelar de la sentencia, Waste Management les propuso a los recurridos la reinstalación en la posición y localidad en la que habían trabajado antes de ser despedidos, pero tal oferta estaba sujeta a lo que resolviera el foro apelativo en la apelación presentada por Waste Management. Los recurridos rechazaron la oferta por considerar que estaba condicionada, lo que no cumplía con los términos de la sentencia emitida por el Tribunal de Primera Instancia.
Waste Management y los recurridos se reunieron para determinar a cuánto ascendían las partidas de daños y perjuicios, los salarios dejados de devengar, las costas y honorarios y lo adeudado hasta el 19 de noviembre de 2004, fecha en que Waste Management le hizo la oferta de reinstalación a los recurridos. Waste Management les satisfizo a los recurridos todas las cuantías acordadas. No obstante, les señaló a los recurridos que la oferta de reinstalación tuvo el efecto de detener la acumulación de las cuantías por concepto de paga adelantada (front pay) y que el rechazo de la oferta relevó a Waste Management de su obligación de reinstalarlos en sus posiciones. Por tanto, Waste Management sostuvo que no procedía la reinstalación de los recurridos ni el pago de las cuantías por concepto de front pay acumuladas desde el 19 de noviembre de 2004.
Los recurridos recurrieron al Tribunal de Primera Instancia y presentaron una moción de desacato en la que solicitaron que se señalara una vista y se ordenara a Waste Management a reinstalar en sus puestos a los recurridos y a pagar el front pay desde el 19 de noviembre de 2004. El tribunal a quo acogió la solicitud de los recurridos y le dio un término de veinte días a Waste Management para cumplir la orden. Inconforme, Waste Management recurrió al foro apelativo y éste confirmó el dictamen del Tribunal de Primera Instancia. El foro apelativo resolvió que la oferta de reinstalación extendida a los recurridos no tuvo el efecto de relevar a Waste Management del pago de front pay, por ser una oferta condicionada.
Los empleados presentaron ante el Tribunal de Primera Instancia una moción en la que detallaban el cómputo del pago adeudado de front pay desde noviembre de 2004 a mayo de 2007, único asunto pendiente que quedaba en el caso. En su moción indicaron que Waste Management les exigió entrar en un procedimiento de back, pay, para hacer descubrimiento de prueba. En ese tipo de procedimiento, el patrono actualiza la información sobre los salarios devengados por el empleado en sus otros empleos para deducirlos de la cantidad bruta reclamada y el empleado obtiene información sobre aumentos de sueldo que el patrono puso en efecto durante el tiempo en que estuvo fuera del trabajo y a los que hubiese tenido derecho de no haber sido despedido ilegalmente de su empleo.
Según los recurridos, al momento del despido, el salario mensual promedio de Castillo era de $3,382 y el de Acevedo era de $3,253 mensuales. Ese salario se computó sobre la base de $9.49 por hora. Los aumentos informados por el patrono fueron los siguientes: $11.29 efectivo en noviembre de 2004, $11.79 efectivo el 28 de mayo de 2005, $12.29 efectivo en mayo de 2006 y $12.79 efectivo en mayo de 2007. En el caso del querellante Castillo, el total de salarios dejados de devengar fue $139,536, menos un crédito por ingresos colaterales de $31,593, para un total de $107,943. Al aplicar la doble penalidad, el pago adeudado ascendía a $215,886. En el caso del querellante Acevedo, el total de salarios dejados de devengar fue $135,327, menos un crédito por ingresos colaterales de $70,332, para un total de $65,005, que al aplicar la doble penalidad ascendía a $130,010. A estos totales, debía añadirse el pago de intereses y de honorarios de abogado.
Luego de la celebración de una vista para discutir el asunto, quedó como única controversia si procedía incluir el pago de horas extras en el cómputo del front pay o si debía computarse exclusivamente a base de *823 cuarenta horas semanales. Los recurridos argumentaron que debía incluirse las horas extras debido a que en el cómputo del back pay sí se incluyeron. Además, señalaron que ellos eran los que trabajaban más horas extras en la empresa, un promedio de quince horas extras semanalmente cada uno.
Waste Management argumentó que la legislación no reconocía el resarcimiento económico del tiempo extra ni se incluyó esa partida en la sentencia emitida por el Tribunal de Primera Instancia; que la jurisprudencia no fijaba el alcance de lo que se definía como “los salarios dejados de devengar”; y que no bastaba con alegar que la parte querellante tenía derecho a recibir esa paga por razón de la misma sentencia, sino que le correspondía a la parte recurrida poner al tribunal a quo en posición de poder concluir que en el futuro esa parte trabajaría horas extras, debido a que se trataba de una fórmula especulativa. Adujo que el récord carecía de esas conclusiones.
El Tribunal de Primera Instancia resolvió la controversia y emitió una resolución en la que determinó que debían incluirse las horas extras en el cómputo del front pay. A esos efectos señaló que cuando se hizo el cómputo del back pay, se incluyeron las horas extras; que Waste Management ya había hecho pagos por concepto de paga devengada (back pay) y de paga adelantada (front pay) que incluyeron en el cálculo las horas extras, por lo que no había razón para excluirlas en esta ocasión. El tribunal a quo también aclaró que cuando estableció en su sentencia los salarios dejados de devengar, incluyó en el cómputo el pago de horas extras. Por tanto, se imponía utilizar ese criterio en esta etapa también.
El Tribunal de Primera Instancia fundamentó su decisión en lo señalado por la doctrina en cuanto a que el cálculo de la paga atrasada requiere de varias consideraciones, como, por ejemplo, el tipo de salario del empleado, los cambios en los salarios o bonos que se concedieron durante el período de desempleo de ese empleado y el trabajo extraordinario o las horas extras que probablemente hubiese trabajado. D. Fernández, El Arbitraje Obrero-Patronal 223 (Forum 2000). Al así resolver, el Tribunal de Primera Instancia acogió la moción de los recurridos y ordenó el pago de $215,886 al Sr. Castillo y de $130,010 al Sr. Acevedo, más intereses y honorarios de abogado.
Inconforme con esa resolución, Waste Management presentó ante nos este recurso de certiorari en el que plantea como único error que el Tribunal de Primera Instancia incidió al resolver que procedía incluir las horas extras en el cálculo del pago adelantado (front pay) adeudado a los recurridos. Argumenta que el Tribunal de Primera Instancia utilizó indiscriminadamente los términos de back pay y front pay y no apoya su determinación en la ley o la jurisprudencia.
Luego de argumentar que en nuestro ordenamiento no existe una normativa clara en cuanto al cálculo de las compensaciones de front pay, Waste Management destacó la definición de front pay dada por el Tribunal Supremo de Estados Unidos en Pollard v. E.I. du Pont Nemours & Co., 532 U.S. 843, 846 (2001): “front pay is simply money awarded for lost compensation during the period between judgment and reinstatement or in lieu of reinstatement". A esos efectos, Waste Management argumenta que si bien el Tribunal de Primera Instancia incluyó las horas extras en el cómputo del back pay o salarios dejados de devengar, no procedía aplicar el pago de horas extras al concepto d& front pay. Según la peticionaria, el front pay es la cantidad de dinero concedida por la pérdida de compensación económica durante el período comprendido desde que se emite la sentencia hasta el momento de la reinstalación real del empleado. De ahí que el concepto de front pay no es lo mismo que back pay o salarios dejados de devengar, los cuales debían probarse en la vista en su fondo del caso.
Específicamente, Waste Management argumenta que la sentencia original concluyó que los recurridos eran los que más horas extras trabajaban en la empresa, con un'promedio de quince horas extras semanalmente cada uno. Waste Management señala, sin embargo, que sostener que los recurridos hubiesen trabajado quince horas extras semanalmente durante el período de noviembre de 2004 a mayo de 2007 es un hecho altamente especulativo, ante todos los cambios sufridos por Waste Management en los últimos años. Alega que tal *824 pretensión viola su debido proceso de ley, al no tener la oportunidad de defenderse, presentar testimonio o exponer su teoría sobre el asunto.
La parte peticionaria aduce que por tratarse de trabajadores unionados, existe certeza sobre las escalas de sueldo y los aumentos salariales, elementos que consideró el Tribunal de Primera Instancia al determinar la cuantía adeudada hasta la reinstalación. Sin embargo, no existe certeza para establecer el número de horas extras que trabajaría un trabajador de la compañía seis años después de su despido. Añade que no existe razón alguna por la cual Waste Management deba ser penalizado y obligado a incurrir en un gasto que la ley no le impone.
La parte recurrida compareció ante nos a presentar su postura y sostiene que hay que aclarar que la partida d& front pay concedida en el caso no goza de la naturaleza de un front pay ordinario. Ello debido a que el front pay es la compensabilidad por pérdida de ingresos futuros, en que se trata de proyectar la pérdida de ingresos futura y ajustarla a su valor presente. Esa proyección de pérdidas futuras es la que entraña un cierto grado de especulación y debe estar sujeta al proceso de establecer su valor presente mediante el uso de fórmulas económicas. La parte recurrida argumenta, sin embargo, que el cálculo en la controversia que nos ocupa no acarrea el elemento especulativo de pérdida de ingreso futuro, debido a que éste se reduce a calcular una pérdida de ingresos ya pasada que comprende el período de noviembre de 2004 a mayo de 2007. Es decir, que el front pay en este caso lo que comprende son los salarios adeudados por Waste Management por la tardanza en cumplir con la orden de reinstalación inmediata. Por tal razón, el proceso decisional aplicable es idéntico al utilizado por el Tribunal de Primera Instancia al calcular el back pay en su sentencia original.
II
El Tribunal de Primera Instancia en su sentencia expresó lo siguiente:

“47. La compensabilidad de daños por pérdida de ingresos futuro[s], conocida como “front pay” es un remedio reconocido en un caso como el presente. Odriozola v. S. Cosmetic Dist. Co., [116 D.P.R. 485 (1985)], supra, a las págs. 509-510.

48. Se adjudica a beneficio de Castillo una partida de “front pay” equivalente a $401.50 semanales; se trata del salario promedio semanal con la parte querellada de $786.50 semanales luego de deducido su actual ingreso de $385.00 semanales. Se adjudica a beneficio de Acevedo una partida de “front pay” equivalente a $276.51 semanales; se trata del salario promedio semanal con la querellada de $756.51, luego de deducido su actual ingreso de $480.00 semanales.

49. Como ya vimos anteriormente, estos cálculos fueron debidamente establecidos con la prueba de autos. Esta partida cubrirá el término que comprende desde la fecha de esta sentencia hasta que Castillo y Acevedo sean efectivamente reinstalados. Estas partida[s] están cubiertas por la disposición de doble penalidad, antes citada, de la “Ley de Represalias”. Sólo así se logrará un remedio equitativo y completo ante la conducta ilegal en este caso. [Citas omitidas]

50. En las circunstancias de este caso, el “frontpay” es el remedio post-sentencia para lidear con los efectos de la conducta ilegal y propicia una reinstalación inmediata. La reinstalación inmediata detiene el que se acumule el “front pay". La acumulación sería a razón de $401.50 semanales (más penalidad) para Castillo y $276.51 semanales (más penalidad) para Acevedo desde la fecha de esta sentencia hasta la fecha de efectividad de la reinstalación. ”

(Subrayado en el original; énfasis adicional nuestro.) Apéndice del peticionario, a las págs. 51-52.
El Tribunal de Primera Instancia en su sentencia se refiere a front pay como el pago que corresponde hacer *825 al patrono desde que se dicte la sentencia hasta que el patrono efectivamente reinstale a los recurridos Castillo y Acevedo. No obstante, debemos aclarar lo que la jurisprudencia de Puerto Rico entiende por front pay, pues las partes interpretan el concepto de manera distinta y, como consecuencia, le imponen un alcance diverso.
En Odriozola v. Cosmetic Dist. Corp., 116 D.P.R., a la pág. 509, el Tribunal Supremo hizo referencia al concepto de. front pay en la ley federal contra el discrimen por edad en el empleo, en el que se define front pay como la compensabilidad de daños por pérdida de ingresos futuros. En ese caso, el patrono despidió a un empleado por discrimen por edad. El empleado tenía 60 años. Se determinó que tenía derecho a una cuantía correspondiente a la pérdida de ingresos desde la fecha de la sentencia hasta que el demandante cumpliera 65 años de edad. Ello debido a que la Alta Curia resolvió que un empleado despedido discriminatoriamente tiene derecho a que se le compense por los ingresos futuros que pudiera devengar hasta la edad del retiro. Adviértase que en algunos casos no puede decretarse la reinstalación del empleado a su puesto, ya sea por el antagonismo entre el patrono y el empleado o porque, como en ese caso en particular, la ley proveía protección al empleado hasta los 65 años, que era la edad de retiro.
En Díaz v. Pneumatics & Hydraulics, res. el 17 de octubre de 2006, 169 D.P.R. _ (2006), 2006 J.T.S. 162, el Tribunal Supremo también utilizó el concepto de front pay para referirse a los daños por pérdida de ingresos futuros o paga prospectiva. En ese caso, la Alta Curia dejó sin efecto una partida de $572,000 por concepto de “salarios futuros dejados de percibir" o “lucro cesante”.
Más recientemente, en Mestres v. Dosal, res. el 7 de febrero de 2008, 173 D.P.R. _ (2008), 2008 J.T.S. 41, el Tribunal Supremo se refirió al front pay como el lucro cesante futuro. En ese caso, un empleado de 65 años de edad fue despedido discriminatoriamente por razón de edad. Probado que el despido fue por discrimen, se determinó que el empleado, si bien tenía 65 años de edad, estaba cualificado para realizar sus labores, por lo que tenía derecho a que se le compensara por la pérdida de ingresos futuros.
Al así resolver, en Mestres v. Dosal, el Tribunal Supremo señaló que la reposición en el empleo es el remedio preferente en los casos de despido por discrimen y la compensación por daños económicos dependerá de si el empleado puede ser reinstalado a su trabajo. Por tanto, “cuandoproceda la reposición en el empleo, la compensación [por] concepto de salarios dejados de recibir se limita a los salarios que hubiese recibido el empleado desde su despido hasta dictada la sentencia. Por el contrario, cuando la reposición no sea posible, el empleado podría ser acreedor a una compensación adicional [por] concepto de daños por la pérdida de ingresos futuros”. (Subrayado nuestro). 2008 J.T.S. 41, a la pág. 777.
III
En el caso de autos, el despido de los recurrentes fue injustificado y se hizo por represalias al éstos denunciar una situación de seguridad e incoar una querella en el Departamento del Trabajo. La Ley de Represalias, supra, al igual que la Ley 100, supra, provee la restitución en el empleo como uno de los'remedios que puede solicitar el empleado despedido. Otros remedios son los salarios dejados de devengar, daños, angustias mentales, beneficios y honorarios de abogado. [1]
El Tribunal de Primera Instancia otorgó en su sentencia el pago de los salarios dejados de percibir, pago que denominó como back pay, y el pago de los salarios correspondientes desde la fecha en que dictó la sentencia hasta la fecha de reinstalación, pago que denominó como front pay. La controversia en el caso de autos está relacionada con el pago de los salarios adeudados desde noviembre de 2004 a mayo de 2007, ya que el patrono les había pagado a los recurridos el back pay hasta el 19 de noviembre de 2004. La sentencia se dictó el 19 de noviembre de 2004 y se notificó el 13 de septiembre de 2004. [2]
En Puerto Rico se ha adoptado como norma jurisprudencial que el front pay corresponde a la pérdida de ingresos futuros o lucro cesante del empleado cuando no se le reinstala en su empleo. Dicho de otro modo, la *826 compensación por concepto de la pérdida económica se limitará a ingresos pasados desde la fecha de reinstalación o reposición del empleado, pero, de no ser posible la reinstalación del empleado, el tribunal deberá determinar, además, la procedencia de una compensación por concepto de daños por pérdida de ingresos futuros, que es lo que se ha denominado en Puerto Rico como front pay. S.L.G. Afanador v. Roger Electric Co., Inc., 156 D.P.R. 651, 668-669 y 670 (2002).
Adviértase que en este caso, el patrono le hizo una oferta de reinstalación condicionada a los recurridos que fue rechazada por ellos y que el Tribunal de Primera Instancia no reconoció como válida, precisamente por estar condicionada. Por lo tanto, esa oferta de reinstalación no tuvo efecto alguno en cuanto a detener el período de paga atrasada o back pay. A pesar de que el tribunal a quo denominó el pago en controversia como front pay, lo cierto es que en Puerto Rico todo pago desde la fecha de despido hasta la fecha de la reinstalación constituye realmente paga atrasada o back pay.
El foro sentenciador denominó front pay los salarios correspondientes a los recurridos desde que se dictó la sentencia hasta la fecha en que Waste Management los reinstalara con certeza. Tal definición encuentra apoyo en la jurisprudencia federal citada por la parte peticionaria. Véase Pollard v. E.I. du Pont Nemours & Co., 532 U.S. 843, 846 (2001): “front pay is simply money awarded for lost compensation during the period between judgment and reinstatement or in lieu of reinstatement”. Correcta o imprecisamente denominada, la orden recurrida es clara: Waste Management tiene la obligación de pagar a los recurridos lo que les debe como salarios y otros beneficios desde que fueron despedidos hasta que los reinstaló definitivamente. Ya satisfizo una parte de esa obligación; queda otra al descubierto.
En su resolución, el Tribunal de Primera Instancia tomó en consideración el pago de horas extras para la cuantía que denominó back pay porque los recurridos demostraron que, de no haber sido despedidos injustamente, hubieran trabajado tiempo adicional en beneficio de su patrono, cuyo promedio fue también demostrado ante el foro sentenciador. Lo único que sería especulativo en este caso sería afirmar que los dos empleados recurridos habrían alterado en algún momento de ese período su disponibilidad para trabajar tiempo extra. Waste Management adujo problemas económicos y estructurales recientes que hubieran afectado tal estado de cosas, pero no nos ha persuadido de que el trabajo extra fue suspendido totalmente como práctica en el lugar de trabajo durante el período en cuestión o que nunca hubiera estado disponible para estos dos empleados.
El pago adeudado en controversia debe computarse de la misma forma que se hizo con el pago que se denominó back pay, porque en este caso, los empleados recurridos retornaron a su antiguo trabajo y no se les ha compensado por el período previo en que no recibieron paga y beneficios por sus labores. La cuantía aún adeudada cubre el plazo que va desde noviembre de 2004 a mayo de 2007. No incidió el tribunal recurrido al incluir el promedio de horas extras, demostrado previamente por los empleados, en el cómputo que completa todo lo adeudado, hasta que los empleados acreedores fueron definitivamente reinstalados.
IV
Por los fundamentos expuestos, se expide el auto solicitado y se confirma la resolución recurrida.
Así lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.
María Elena Pérez Ortiz Secretaria del Tribunal de Apelaciones
ESCOLIOS 2009 DTA 27

1. El Art. 2 de la Ley de Represalias, 20 L.P.R.A. sec. 194b, establece en lo pertinente como sigue:

*827
“(a) Ningún patrono podrá despedir, amenazar, o discriminar contra un empleado con relación a los términos, condiciones, compensación, ubicación, beneficios o privilegios del empleo porque el empleado ofrezca o intente ofrecer, verbalmente o por escrito, cualquier testimonio, expresión o información ante un foro legislativo, administrativo o judicial en Puerto Rico, cuando dichas expresiones no sean de carácter difamatorio ni constituyan divulgación de información privilegiada establecida por ley.

(b) Cualquier persona que alegue una violación a las sees. 194 et seq. de este título podrá instar una acción civil en contra del patrono dentro de tres (3) años de la fecha en que ocurrió dicha violación y solicitar se le compense por los daños reales sufridos, las angustias mentales, la restitución en el empleo, los salarios dejados de devengar, beneficios y honorarios de abogado. La responsabilidad del patrono con relación a los daños y a los salarios dejados de devengar será el doble de la cuantía que se determine causó la violación a las disposiciones de dichas secciones. ”

2. El Profesor Demetrio Fernández señala que: “[E]s lógico pensar que un empleado despedido injustificadamente deba recibir paga atrasada por el período que comprende desde el despido hasta la reinstalación ”. "El propósito de la paga atrasada es compensar al empleado en la pérdida de salarios que ha incurrido...”. La pérdida de ingresos generalmente se calcula por los salarios y beneficios que hubiera devengado durante el período que estuvo despedido”. “El cálculo de la paga atrasada requiere de un sinnúmero de consideraciones. Es necesario determinar el tipo de salario del empleado y los cambios en salarios o bonos que se concedieron, algunos durante el período de su desempleo. También es menester precisar el trabajo extraordinario u horas extras que hubiera probablemente trabajado. Esos cálculos dependen si las horas extras son trabajadas obligatoriamente o voluntariamente, en la disponibilidad del trabajo extraordinario durante el período de ausencia del empleado y en el historial del empleado trabajando o rehusando trabajar horas extras. La paga atrasada debe incluir las cantidades que se hubieran aportado a los planes de pensión y de beneficencia. El árbitro tiene también que considerar las posibles reducciones en la cantidad que se adeuda. El deber u obligación de mitigar requiere una deducción de lo que haya devengado el empleado en el entretanto”. El Arbitraje Obrero Patronal, supra, a las págs. 222, 223-224.