M. SMITH, Circuit Judge,
concurring in the judgment:
I concur in the judgment of the majority opinion. However, I disagree with the majority’s Seventh Amendment analysis in Part IV of the opinion. I disagree that the district court “should have viewed itself as bound under the Seventh Amendment” because “Teutscher needed to make the same factual showing and to meet the same defenses” in order to obtain both future lost earnings and reinstatement. Maj. Op. at 947. Instead, I would hold that the district court’s equitable remedy was an improper abuse of discretion, because the district court did not give reasons why additional equitable relief was appropriate after the jury had already compensated Teutscher for the monetary harm he suffered.
The district court’s equitable remedy took the form of reinstatement, with front pay until reinstatement could occur. In addition, the jury awarded Teutscher a lump sum for compensatory damages that included future lost earnings. In this case, the majority’s constitutional analysis is based on a conclusion that the factual underpinnings of the jury’s award for future lost earnings is identical to those supporting the district court’s equitable award.
I disagree that this is necessarily the case. Future lost earnings and front pay are different remedies designed to address different wrongs, and should be analyzed using a different analytical framework. As such, a plaintiff can be awarded both without offending the Constitution.
As the majority notes, the jury was only empowered to grant legal relief to Teutscher in the form of compensatory and punitive damages on the state law claims. Maj. Op. at 943. The district court, in contrast, was only able to grant “appropriate equitable relief’ on the ERISA claim. 29 U.S.C § 1132(a)(3); Maj. Op. at 943. The district court was not authorized to grant Teutscher any form of legal relief, including compensatory money damages. Mertens v. Hewitt Assocs., 508 U.S. 248, 255, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993); see also McLeod v. Or. Lithoprint Inc., 102 F.3d 376, 378 (9th Cir. 1996).
*959 It could, however, reinstate Teutscher in his job. “Reinstatement is equitable, not compensatory, relief.” McLeod, 102 F.3d at 379. Front pay is also equitable, because it goes hand-in-hand with reinstatement and is to be used “during the period between the judgment and reinstatement or in lieu of reinstatement.” Pollard v. E.I. du Pont de Nemours & Co., 532 U.S. 843, 846, 121 S.Ct. 1946, 150 L.Ed.2d 62 (2001). Although front pay may look very similar to compensatory damages for future lost earnings, it is a distinct remedy. The Seventh Circuit has upheld an award of both future lost earnings and front pay, and concluded that such an award does not necessarily constitute a double recovery. Williams v. Pharmacia, Inc., 137 F.3d 944, 953 (7th Cir. 1998). This is so because front pay is the “functional equivalent” of the equitable remedy of reinstatement. Id. at 952. Future lost earnings, on the other hand, are compensatory damages calibrated to actual “monetary losses after the date of judgment.” Pollard, 532 U.S. at 852, 121 S.Ct. 1946. The Supreme Court confirmed this distinction in Pollard, when it held that equitable front pay was separate from compensatory damages (both past and future), and was therefore not subject to the damages cap under Title VII. Id.
The Williams court also noted that a jury award for future compensatory damages was not necessarily factually inconsistent with an equitable front pay award because the awards can “compensate the plaintiff for different injuries.” Williams, 137 F.3d at 953. Reinstatement (and front pay) puts the plaintiff back in his job, or at least pays him as if he had been reinstated. Future compensatory damages can be significantly broader than that, and encompass reputational harms, loss of experience, and other “forward-looking aspects of the injury caused by the discriminatory conduct.” Id. Similarly, a compensatory damages award that only gives the plaintiff the cash value of reasonably-certain future earnings at a particular place of employment might still leave the plaintiff suffering harms that might be appropriately remedied with reinstatement, such as a restored track record and job history, which could assist the plaintiff in future employment searches.
In this way, each remedy can have some unique benefits, even though the core of the harm (a lost paycheck) can be remedied by either. In addition to this practical distinction, the Supreme Court in Pollard made clear that there is a technical distinction between compensatory damages for future lost earnings and equitable front pay in lieu of reinstatement. 532 U.S. at 852, 121 S.Ct. 1946. For the two awards to be a violation of the Seventh Amendment, moreover, the issues underlying each must be “common to both the legal and equitable claims.” Dairy Queen, Inc. v. Wood, 369 U.S. 469, 472, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962). Again, although there is significant overlap between the compensatory and equitable inquiries, they are not identical.
The jury in this case was instructed to calculate “the present cash value of any future wages and benefits that [Teutscher] would have earned for the length of time the employment with Defendant was reasonably certain to continue,” to be awarded as a lump sum. The implied factual questions to be decided by the jury were how long Teutscher was “reasonably certain” to continue his employment with RSA, and his rate of pay.
When deciding reinstatement and front pay, on the other hand, the district court must first and foremost decide whether any equitable relief is “appropriate ... to redress” the defendant’s ERISA violation. 29 U.S.C. § 1132(a)(3). As the majority *960 notes, the district court should address factors such as work-life expectancy in making this determination, which is similar to the question posed to the jury. Maj. Op. at 948-49. Moreover, it is certainly correct that the jury’s monetary award is highly relevant in determining what additional equitable relief, if any, is “appropriate” in a given situation. But, in my view, the issues common to each inquiry are not precisely the same such that giving both awards would trigger a Seventh Amendment concern. The jury was asked to consider the narrow question of the cash value of the wages which Teutscher would have earned at RSA with reasonable certainty. The district court has much wider latitude when deciding whether reinstatement is “appropriate,” and if so, whether it is feasible, and if not, whether to award front pay. In Downey v. Strain, 510 F.3d 534 (5th Cir. 2007), the Fifth Circuit noted that “[fjront pay can only be calculated through intelligent guesswork, and we recognize its speculative character by according wide latitude in its determination to the district courts.” Id. at 544 (quoting Sellers v. Delgado Coll., 781 F.2d 503, 505 (5th Cir. 1986)). The jury, which has considerably less latitude, is necessarily engaging in a narrower inquiry than the one the district court is empowered to undertake.
In sum, Pollard instructs us that although they may look very similar, there is a distinction between future compensatory damages and front pay that we must respect. I believe that distinction should extend into the Seventh Amendment context because it may often be perfectly reasonable for a jury to award future compensatory damages and for a district court to award reinstatement (with or without front pay) in a way that is factually consistent with the jury’s verdict. This indicates that the legal and factual issues underpinning the awards are not the same. Here, the jury’s verdict was general, and the district court provided very little reasoning for its equitable award. Under these circumstances, I do not think we can confidently draw the implication that the district court unconstitutionally disregarded the jury’s factual findings.
I concur in the judgment, however, because I believe the district court abused its discretion in granting reinstatement in this context. As the majority observes, the jury had been asked to compensate Teutscher for the cash value of his future paychecks with RSA. The district court’s analysis on reinstatement is only a paragraph, and appears to assume that additional equitable relief was “appropriate” to redress the ERISA violation over and above the jury verdict. If the district court had provided reasoning to explain why it believed reinstatement was appropriate to redress non-monetary wrongs inflicted on Teutscher, it might have articulated a basis for reinstatement that was in harmony with the damages award. On this thin record, however, it is not apparent that is what happened. Therefore, I would reverse the equitable award as an abuse of discretion.