10-1040-cv (L)
*Bergerson v. Office of Mental Health*

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

August Term 2010

Docket Nos. 10-1040-cv (L), 10-1247-cv (XAP)

Argued:  April 11, 2011          Decided: July 21, 2011

_____

CHRISTINE A. BERGERSON,

*Plaintiff-Appellant-Cross-Appellee*,

- v. -

NEW YORK STATE OFFICE OF MENTAL HEALTH, CENTRAL NEW YORK PSYCHIATRIC CENTER,

*Defendant-Appellee-Cross-Appellant*.

_____

Before: KEARSE, MINER, and CHIN, <u>Circuit Judges</u>.

Appeal from a judgment entered February 17, 2010, following a jury trial, in the United States District Court for the Northern District of New York (Hurd, <u>J.</u>), <u>inter alia</u> (1) granting defendant's motion to bar any award of backpay because plaintiff would be made whole, including for any lost wages, by her compensatory damages award; (2) denying plaintiff's motion to amend a summary judgment order dismissing her state law claims as abandoned; and (3) granting plaintiff's motion for reasonable attorney's fees at the rate of $210 per hour; cross-appeal, designated by defendant as "protective," from the same judgment arguing against the relief sought by plaintiff.

Affirmed in part and vacated and remanded in part.

A.J. BOSMAN, ESQ., Bosman Law Firm LLC, Rome, New York, <u>for</u> <u>Plaintiff-Appellant-Cross-Appellee</u>.

CECELIA C. CHANG, Assistant Solicitor General (<u>on behalf of</u> Eric T. Schneiderman, Attorney General of the State of New York, Barbara D. Underwood, Solicitor General, and Benjamin N. Gutman, Deputy Solicitor General, <u>of counsel</u>), New York, New York, <u>for</u> <u>Defendant-Appellee-Cross-Appellant</u>.

MINER, Circuit Judge:

Plaintiff-appellant-cross-appellee, Christine Bergerson,[1] appeals from a judgment entered February 17, 2010, following a jury trial, in the United States District Court for the Northern District of New York (Hurd, J.). Defendant-appellee-cross-appellant, the New York State Office of Mental Health, Central New York Psychiatric Center ("CNYPC"), interposes a cross-appeal, designated as "protective," from the same judgment. Bergerson brought the action giving rise to the appeal under the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–17 (2006), claiming compensatory damages for disparate treatment and hostile work environment. She also brought parallel state law claims under the New York Human Rights Law. N.Y. Exec. Law §§ 290–301 (McKinney 2010). Bergerson additionally sought backpay and reinstatement under Title VII and attorneys' fees. Prior to trial, the District Court ruled that neither the issue of backpay nor reinstatement (or front pay) would be submitted to the jury and that the court would hold a separate inquest on the issue of backpay and front pay if the jury returned a verdict in Bergerson's favor.

A jury trial was conducted in October 2009. Following trial, the jury found for Bergerson, awarding her $580,000 in compensatory damages, which amount was thereafter reduced by the District Court to the federal statutory cap of $300,000. The parties then made numerous post-trial motions, several of which are at issue in this appeal. First, CNYPC filed a motion to bar any award of backpay, which motion was granted by the court. Without holding a separate inquest into backpay and without having submitted the issue to the jury, the court found that "the magnitude of the jury's award ensures that [Bergerson] will be made whole for her injuries, including for any lost wages," and for any "pain, suffering, or emotional distress."

Bergerson moved, under Federal Rule of Civil Procedure 54(b), to amend the court's April 2009 decision granting summary judgment dismissing her state law claims as abandoned. By the motion, Bergerson sought to remove any reference to her having "abandoned" her state law claims

---

[1] Bergerson apparently changed her last name to Fuller. Because she filed her appeal under the name "Christine Bergerson," we refer to her by that name in this opinion.

2

and instead asked the court to decline to exercise supplemental jurisdiction over her state law claims. She also moved for attorneys' fees, requesting an hourly rate of $275 for her trial counsel. As to the former, the court denied the motion, finding that Bergerson indeed abandoned her state law claims and, furthermore, that Bergerson did not oppose the court's dismissal until over six months later. As to Bergerson's application for attorneys' fees, the court awarded fees for all hours claimed by Bergerson's counsel but found the "prevailing hourly rate" in the Northern District to be $210 and awarded fees to Bergerson's trial counsel at that rate.

On appeal, Bergerson challenges the District Court's rulings on the post-trial motions regarding backpay, her state law claims, and the hourly rated applied to the award of attorney's fees. In its cross-appeal, designated as "protective," CNYPC argues against the relief sought by plaintiff, contending: (1) that the District Court acted within its discretion in both declining to amend its prior order dismissing Bergerson's state law claims and in awarding attorney's fees at the rate of $210 per hour; and (2) that remand is appropriate to "enable the district court to clarify its post-trial rulings as to compensatory damages and backpay." For the following reasons, we affirm the District Court's judgment as to Bergerson's state law claims and attorney's fees, but we vacate and remand to the District Court on the issues of backpay and front pay.

## BACKGROUND

I.      Bergerson's Employment with the Office of Mental Health

The following background facts are derived from the evidence adduced on Bergerson's behalf and are not contested on appeal. Bergerson was hired by the CNYPC as a probationary security hospital treatment assistant on September 10, 2004. From the very beginning of her employment, her coworkers made ongoing derogatory sexual comments about females in general and about Bergerson in particular. Many employees expressed the opinion that the CNYPC was not an appropriate place for females to work. Jokes, wise-cracks, and comments such as "women should stay barefoot and pregnant" were common. At least one poster was hung portraying

3

Bergerson in a lewd manner. Computer screen savers inferring lewd conduct were also displayed on several occasions in work areas to which Bergerson was exposed.

Sexual comments were made about Bergerson, who is Caucasian, her alleged promiscuity, and her alleged attraction to African-American men. One African-American coworker was told that he should hook up with Bergerson because she "did the bros." Coworkers made comments about the type of undergarments that Bergerson wore. Rumors were spread about her dating and sex life, and she was blamed for the breakup of a coworker's marriage. It was also rumored that Bergerson was having sex with facility doctors in exchange for money. Racial comments were also directed toward her, such as "once you go black you don't go back," and rumors were spread that she was dating an African-American supervisor, Keith Richardson, although they were apparently "just friends" for most of Bergerson's employment.[2]

Bergerson made multiple unsuccessful complaints about her workplace environment to her supervisors. In one instance, a female supervisor responded to Bergerson's complaints by telling her that it was a "man's environment" and that she should "just deal with it." At one point, Bergerson took advantage of counseling through CNYPC's Employee Assistance Program.

Because Bergerson was hired as a probationary employee, the terms of her employment imposed a 52-week "probationary period."[3] During the probationary period, a probationary employee is reviewed periodically and is evaluated in nine work-performance categories, if applicable: Quality of Work; Work Habits, Work Interest; Resourcefulness; Relationship with People; Reaction to Supervisor; Attendance; Analytical and Problem Solving Abilities; Written and Oral Presentation; and Ability to Supervise. Each evaluation results either in termination or in

---

[2] Bergerson eventually began a romantic relationship with Richardson, the timing of which is not entirely clear. See generally United States v. Reeves, 591 F.3d 77, 81 (2d Cir. 2010) (observing that "[w]hat makes a relationship 'romantic,' let alone 'significant' in its romantic depth, can be the subject of endless debate that varies across generations, regions, and genders").

[3] The New York Administrative Code defines "probationary term" and sets forth the scope of probationary employment, including the requirement that "every permanent appointment . . . shall be subject to a probationary term of not less than 26 nor more than 52 weeks." N.Y. Comp. Codes R. & Regs. tit. 4, § 4.5 (2011).

continuation of the employee's probationary period. Bergerson's performance was evaluated on five occasions.

Bergerson's first evaluation, in December 2004, reflected an average rating for all categories except "Relationship with People." The evaluator's comment in rating her below average in that category indicated that she needed to work on acceptance by her peers. Bergerson's second evaluation took place on March 14, 2005. She was rated average in four categories. However, she was rated below average in the "Relationship with People" category and unacceptable in the "Quality of Work," "Work Habits, Work Interest," and "Attendance" categories. There were comments written in the "additional information" section indicating that Bergerson should have more knowledge of policy and procedure, follow protocol, be able to keep track of her keys, and know the census and the whereabouts of her patients at all times. It was recommended that probation be continued. Bergerson's third evaluation, on June 12, 2005, reflected an average rating in all categories. It was again recommended that her probation should continue. Her evaluator made an oral comment, however, that it was not in Bergerson's "best interest" to continue her alleged "relationship with Richardson."

Bergerson's fourth evaluation was completed on September 3, 2005. She was rated average in five categories, below average in the "Relationship with People" and "Reaction to Supervisor" categories, and unacceptable in "Attendance." While her direct supervisor acknowledged that Bergerson did not have any unscheduled absences and was always on time, the supervisor nonetheless noted that he was unable to give a proper evaluation of Bergerson's performance because she did "so many mutuals/swaps that she rarely worked her scheduled time and shift."[4] In order for the supervisor to evaluate Bergerson properly in the future, she was thereafter restricted

---

[4] "Mutuals" are shift swaps between employees. If an employee has a conflict with the work schedule to which he or she was assigned, the employee could find another employee who would work that shift. In return, the first employee would cover one of the second employee's shifts, as mutually agreed. In addition to the two employees' agreement, their respective supervisors were required to approve such mutuals.

from doing mutuals. On September 12, 2005, the CNYPC extended Bergerson's probationary period an additional six months and provided her with written notice of the extension.

Bergerson's fifth and final evaluation was completed on January 18, 2006, approximately two months before the end of her extended probationary period. The evaluator ranked Bergerson average in "Written and Oral Presentation" and below average in "Quality of Work," "Work Habits, Work Interest," "Attendance," and "Analytical and Problem Solving Abilities." She was ranked unacceptable in "Resourcefulness," "Relationship with People," and "Reaction to Supervisor." There were no additional comments.

Following her final evaluation, on January 24, 2006, CNYPC notified Bergerson that her employment would be terminated effective January 31, 2006, and that she would be on administrative leave until that date. As a result, she requested an interview with her supervisor, which was granted and thereafter took place on January 31, 2006. On February 9, 2006, Bergerson was informed by letter that no new information had surfaced at the interview that would overturn the termination decision.

II.     Proceedings in the District Court

Following her termination, Bergerson commenced the Title VII action on December 8, 2006, by filing a complaint alleging discrimination claims based on disparate treatment, hostile work environment, and retaliation. She claimed that she was terminated in part because of her gender and her relationship with Richardson, an African-American coworker. She also brought three parallel state law claims under the New York Human Rights Law. See N.Y. Exec. Law §§ 290–301 (McKinney 2010).

In June 2008, CNYPC moved for summary judgment. As to the state law claims, CNYPC argued that Bergerson's claims were barred by the Eleventh Amendment. In response, Bergerson conceded legal error and expressly "withdr[ew]" those claims. See Pl.'s Mem. of Law in Opp'n to Summ. J. at 1 ("Plaintiff concedes that the Eleventh Amendment bars the State-based claims and accordingly withdraws the second, fourth and sixth causes of action."). On April 21, 2009, the

6

District Court issued a memorandum decision and order. In that decision, the court, based on Bergerson's concession regarding her state law claims, dismissed those claims as "abandoned by plaintiff."[5]

However, the District Court denied CNYPC's summary judgment motion as to Bergerson's disparate treatment and hostile work environment claims, finding that Bergerson "ha[d] adduced sufficient evidence to establish a prima facie case." With respect to Bergerson's disparate treatment claim, the court found that "Bergerson has set forth circumstantial evidence of disparate treatment based upon interracial associations as well as temporal proximity." The court noted that although it was unclear when Bergerson started dating Richardson, she adduced evidence that rumors "abounded" well before they actually started dating and that coworkers commented derogatorily about Bergerson's alleged attraction toward African-American men. The court also found that, depending on which testimony a jury would credit, there was a temporal connection between the commencement of Bergerson's interracial relationship with Richardson and her termination. As to Bergerson's hostile work environment claim, the court found that "[a]lthough it is a close question in this case . . . it is best left for the jury to decide whether the work environment is sufficiently hostile so as to constitute a change in the term, condition, or privilege of Bergerson's employment."

The case proceeded to a jury trial in October 2009.[6] The jury was asked to determine liability and, if CNYPC were found liable, to assess compensatory damages for "Pain, Suffering, and Emotional Distress" and "Harm to Reputation." Bergerson also sought backpay and reinstatement (or front pay) under Title VII, but those issues were not submitted to the jury. Instead, the court reserved decision on those applications and indicated that it would decide whether Bergerson was entitled to such awards on post-trial submissions if the jury returned a verdict in her favor. Following trial, the jury found for Bergerson, awarding her compensatory damages in the amount of

---

[5] The District Court also dismissed Bergerson's retaliation claim, finding that she did not exhaust her administrative remedies. That dismissal is not at issue on appeal.

[6] Shortly before trial, Bergerson filed a stipulation for consent to change attorney, substituting attorney Paul N. Cisternino with attorney A.J. Bosman, who remains her counsel on appeal.

7

$130,000 on her disparate treatment claims ($30,000 for "pain, suffering, and emotional distress" and $100,000 for "harm to reputation") and $450,000 on her hostile work environment claim ($200,000 for "pain, suffering, and emotional distress" and $250,000 for "harm to reputation").

On November 3, 2009, CNYPC moved for judgment as a matter of law or a new trial pursuant to Federal Rules of Civil Procedure 50(b) and 59, respectively. With respect to damages and backpay, CNYPC sought: (1) to vacate the jury's damages award as unsupported by the evidence; or (2) in the alternative, to reduce the award to $300,000, which is the maximum amount allowable under the statutory cap on awards of noneconomic damages under Title VII imposed by 42 U.S.C. § 1981a(b)(3)(D); and (3) to preclude a further award of backpay if the court did not vacate the jury's damages award. In response, on November 17, 2009, Bergerson cross-moved under Federal Rule of Civil Procedure 54(b) to amend the court's summary judgment order to delete any reference to her having "abandoned" her state law claims. Bergerson did so because she wished to re-file her state law claims (which are not subject to a statutory cap on damages) in state court.

At a November 25, 2009 hearing, the District Court granted CNYPC's motion in part. Although the court declined to vacate the jury's damages award — finding it supported by the evidence — the court reduced the damages award to $300,000 as required by Title VII's statutory cap. The court also granted CNYPC's motion to preclude an additional award of backpay. As to Bergerson's motion, the court refrained from amending its summary judgment order to remove the reference to Bergerson having "abandoned" her state law claims. The court noted that Bergerson had in fact abandoned those claims by withdrawing them and by not opposing dismissal and, moreover, that she had waited until after trial — "over six months" after the summary judgment order issued — before seeking modification.

On December 9, 2009, Bergerson moved for reconsideration of the court's backpay ruling and also reaffirmed her demand for front pay and/or reinstatement. Upon reconsideration, the court again denied backpay by a February 16, 2010 Decision and Order. In the same Decision and Order, the court declined to rule on the issue of "front pay and/or reinstatement" because it was not

8

raised in the defendant's motion for judgment as a matter of law or a new trial. The court acknowledged that a central purpose of Title VII is "to make a plaintiff whole for injuries that are a violation of the statute." Although "the jury did not consider [Bergerson's] lost wages," and although the court had denied CNYPC's motion to modify the jury's award as excessive, the court nonetheless concluded that the jury's "substantial damages award satisfie[d]" Title VII's make-whole policy. The court found that "the magnitude of the jury's award ensures that [Bergerson] will be made whole for her injuries, including for any lost wages," and for any "pain, suffering, or emotional distress."[7]

Bergerson also moved for attorney's fees, requesting, to the extent pertinent to this appeal, an hourly rate of $275 for the work of her trial counsel. In response, the court awarded fees for all hours and expenses claimed but reduced the hourly rate to $210, which the court found to be the "prevailing hourly rate[]" in the Northern District for experienced attorneys in civil rights matters. Final judgment was entered on February 17, 2010, awarding Bergerson $300,000 in compensatory damages and $86,008.40 in attorney's fees and costs. Bergerson appeals from the final judgment and CNYPC cross appeals.

On appeal, Bergerson claims: (1) the District Court erred in granting CNYPC's motion to preclude backpay awards and, rather, that she is entitled to both back and front pay and/or reinstatement; (2) the District Court abused its discretion in denying her 54(b) motion to amend the summary judgment with respect to her state law claims; and (3) the District Court abused its discretion in awarding attorneys' fees at $210. In cross-appeal, designated as "protective," CNYPC argues: (1) remand is appropriate to "enable the district court to clarify its post-trial rulings as to compensatory damages and backpay"; and (2) the District Court acted within its discretion both in

---

[7] The court did not refer to Bergerson's probationary status in its written order in ruling on Bergerson's motion for reconsideration. The court had previously stated, in its ruling from the bench upon CNYPC's post-trial motion to preclude an award of backpay, that Bergerson "was a probationary employee and could have been terminated for any reason except, of course, for a discriminatory one."

declining to amend its prior order dismissing Bergerson's state law claims and in awarding attorney's fees at the rate of $210 per hour.

**DISCUSSION**

I.     Standard of Review

We review a district court's denial of backpay under Title VII, the denial of a Rule 54(b) motion for amendment, and an award of attorney's fees for abuse of discretion.  See Albemarle Paper Co. v. Moody, 422 U.S. 405, 424 (1975) (denial of backpay); Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP, 322 F.3d 147, 167 (2d Cir. 2003) (Rule 54(b) motion); McDaniel v. Cnty. of Schenectady, 595 F.3d 411, 416 (2d Cir. 2010) (award of attorney's fees).  A district court abuses its discretion when it rests its decision on an "erroneous view of the law or on a clearly erroneous assessment of the evidence, or render[s] a decision that cannot be located within the range of permissible decisions."  Sims v. Blot, 534 F.3d 117, 132 (2d Cir. 2008) (internal quotation marks and citations omitted).  Abuse of discretion "takes on special significance when reviewing fee decisions because the district court, which is intimately familiar with the nuances of the case, is in a far better position to make such decisions than is an appellate court, which must work from a cold record."  McDaniel, 595 F.3d at 416 (alterations and quotation marks omitted).  With respect to backpay and front pay, we have stated that because "[t]he award of front pay is discretionary, . . . where . . . the district court makes a [nonerroneous] specific finding that an award of back pay [or front pay] was sufficient to make a plaintiff whole, no abuse of discretion can be found."  Saulpaugh v. Monroe Cnty. Hosp., 4 F.3d 134, 145 (2d Cir. 1993).

II.     Bergerson's Title VII Claims

A.     Backpay

Section 1981a permits a Title VII claimant (and other claimants not at issue here) to recover compensatory damages to redress "future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses."  42 U.S.C. § 1981a(b)(3)

10

(2006). These damages may be awarded in addition to economic damages consisting of "backpay . . . or any other type of relief authorized under [42 U.S.C. § 2000e-5(b)]." Id. § 1981a(b)(2).

"An award of backpay is the rule, not the exception." Carrero v. New York City Hous. Auth., 890 F.2d 569, 580 (2d Cir. 1989). The decision to award backpay is "measured against the purposes which inform Title VII," Albemarle, 422 U.S. at 417, which include "remov[ing] the stain discrimination leaves on equality in the workplace" and "mak[ing] victims of discrimination whole," Carrero, 890 F.2d at 580. The Supreme Court has explained that the primary objective of Title VII is prophylactic in nature because the statutory scheme was intended to eliminate past obstacles to workplace equality. See Albermarle, 422 U.S. at 417. Although a trial court has discretion whether to award backpay, its reasons must be explained in the event backpay is denied. See id. at 421 n.14; Carrero, 890 F.2d at 580. Its explanation must be sufficient "so as to make review intelligible." Carrero, 890 F.2d at 580. Front pay is awarded at the discretion of a district court where reinstatement is inappropriate and the plaintiff has been unable to find another job. Saulpaugh, 4 F.3d at 145. The purpose of front pay is to "mak[e] victims of discrimination whole in cases where the factfinder can reasonably predict that the plaintiff has no reasonable prospect of obtaining comparable alternative employment." Padilla v. Metro-North Commuter R.R., 92 F.3d 117, 125–26 (2d Cir. 1996) (internal quotation marks omitted).

During the trial, the District Court stated that it would hold a separate inquest to determine the amount of backpay and front pay due to Bergerson only if CNYPC were found by the jury to be liable under Title VII. After finding CNYPC liable, the jury was asked to award compensatory damages for only two categories of harm: (1) emotional distress, pain, and suffering; and (2) harm to Bergerson's reputation. The jury was not asked to "consider [Bergerson's] lost wages" and was presented with no evidence on this issue.

Post-trial, the District Court determined that the jury's damages award was supported by the evidence and accordingly denied CNYPC's motion to vacate or reduce the damages award except to the extent of reducing the award to the statutory maximum. However, at the same time and without

11

holding a separate inquest, the court also denied Bergerson an equitable award of backpay on the ground that the jury's award was sufficient to make her whole, including for her claim of lost wages. In so finding, the court noted:

> [Bergerson's] substantial damages award satisfied both of the objectives of Title VII. Instead of merely having to comply with an injunctive order prohibiting racial discrimination and hostility in the work environment, [CNYPC] must pay [Bergerson] $300,000 in compensatory damages as a result of its unlawful employment practices. . . . Additionally, the magnitude of the jury's award ensures that [Bergerson] will be made whole for her injuries, including any lost wages, pain, suffering, or emotional distress.

The court recognized that the jury had heard no evidence on backpay but nevertheless found that the award returned Bergerson to the position she would have found herself in had the violations never occurred.

We are unable to adopt this view. While a primary purpose of backpay is indeed to return a victim of discrimination to the position she would have found herself in had the violations never occurred, we have never held that an award of backpay is encompassed within a jury's award of compensatory damages. Indeed, such a view has been foreclosed by § 1981a. Rather, an award of backpay includes "what the employee himself would have earned had he not been discharged." Kirsch v. Fleet Street, Ltd., 148 F.3d 149, 166 (2d Cir. 1998); see also Saulpaugh, 4 F.3d at 144–45 (observing that, ordinarily, a plaintiff is entitled to losses suffered as a result of defendant's discrimination (i.e., from the date of termination until the date of judgment)). An award of backpay is a separate inquiry and requires a district court to make additional factual findings. See Brock v. Casey Truck Sales, Inc., 839 F.2d 872, 880 (2d Cir. 1988) ("These amounts [of backpay] were carefully arrived at by determining first each discharged employee's hourly wage rate and the duration of his loss period.").

Because a backpay award requires a separate inquest, a district court may not deny an award of backpay because it believes that an award of compensatory damages is sufficient. Either an award includes backpay or it does not. We also note that the District Court never found the compensatory damages award to be excessive; rather, upon CNYPC's motion to vacate the jury's damages award as

12

unsupported by the evidence, the court instead reduced the damages award to the statutory cap of $300,000. Accordingly, on remand, the court is directed to hold a separate inquest as to backpay. Of course, we are not requiring the District Court to award backpay to Bergerson; however, if the court declines to award backpay, it must "carefully articulate its reasons," Albemarle, 422 U.S. at 421 n.14, keeping in mind that "[a]n award of backpay is the rule, not the exception," Carrero, 890 F.2d at 580.

B.      Front Pay

Bergerson also sought an award of front pay. Front pay may be awarded pursuant to section 706(g) of the Civil Rights Act of 1964, which provides a court with authority to "order such affirmative action as may be appropriate," including but not limited to "reinstatement or hiring of employees, with or without back pay . . . or any other equitable relief as the court deems appropriate." 42 U.S.C. § 2000e-5(g)(1) (2006); Pollard v. E.I. du Pont de Nemours & Co., 532 U.S. 843, 853–54 (2001). An award of front pay is an alternative to reinstatement where reinstatement is "inappropriate," Reed v. A.W. Lawrence & Co., 95 F.3d 1170, 1182 (2d Cir. 1996), such as where there is animosity between an employer and an employee or where there is no longer a position available at the time of judgment, Whittlesey v. Union Carbide Corp., 742 F.2d 724, 728 (2d Cir. 1984) (describing reinstatement and front pay under the Age Discrimination in Employment Act). An award of front pay is discretionary, and if a district court makes a nonerroneous "specific finding" that a plaintiff has already been made whole, no abuse of discretion can be found in denying front pay. See Saulpaugh, 4 F.3d at 145.

Because we hold that the District Court abused its discretion in its "specific finding" that Bergerson was not entitled to backpay, we cannot assume, as CNYPC would have us do, that front pay is likewise not warranted. The court thus should consider in the first instance on remand whether Bergerson is entitled to reinstatement or, in the alternative, front pay, see Thompson v. Cnty. of Franklin, 15 F.3d 245, 253 (2d Cir. 1994) (holding that the "preferred practice" in this Circuit is to remand the issue for the district court to consider in the first instance), keeping in mind

13

that "front pay is excluded from the statutory cap," Pollard, 532 U.S. at 852; accord Robinson v. Metro-North Commuter R.R. Co., 267 F.3d 147, 157–58 (2d Cir. 2001) (citing Pollard and noting that front pay is an equitable remedy). In its consideration of this issue, the District Court may conduct further proceedings as necessary to determine Bergerson's employment status (i.e., probationary or permanent).

III.    State Law Claims

Bergerson argues that the District Court abused its discretion by refusing to modify its April 21, 2009 Memorandum Decision and Order, which, inter alia, dismissed her state law claims as "abandoned by plaintiff." She contends that the court instead should have "withdr[awn] its 'abandonment' reference, and decline[d] supplemental jurisdiction." Had the court done so, Bergerson contends that she would have been able to re-file, pursuant to New York's savings clause, her state law claims in state court in order to seek damages above and beyond the $300,000 cap that exists in federal court. See N.Y. Exec Law § 297(9) (McKinney 2005); see also Rahiym-Amir v. Bellamy of Corinth, Inc., No. 1:04-CV-121, 2007 WL 4573409, at *4 (N.D.N.Y. Dec. 26, 2007) ("Unlike Title VII, there is no limitation on an award of compensatory damages under New York Human Rights Law."); Walia v. Vivek Purmasir & Assocs., Inc., 160 F. Supp. 2d 380, 389 (E.D.N.Y. 2000) (holding that while damages on plaintiff's Title VII claims were capped, she was not precluded from seeking to recover additional damages under the New York Human Rights Law).

While a district court has the authority to revise an interlocutory order, such as a partial denial of summary judgment, at any time before the entry of final judgment, see Fed. R. Civ. P. 54(b), this Court has treated interlocutory decisions as law of the case. A district court may revisit such decisions but with the caveat that "where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again." Coopers & Lybrand, 322 F.3d at 167 (internal quotation marks omitted). Thus generally, there is a strong presumption against amendment of prior orders. See id. (citing Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992) (holding that a prior order usually may not be

14

changed unless there is an "intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent a manifest injustice") (internal quotation marks omitted)).

Bergerson has not argued here that there has been an intervening change of controlling law or that new evidence has become available. Thus we construe her argument to be that there is a need to correct a clear error or prevent manifest injustice. We do not believe that these conditions have been met for the following reasons.

The New York Civil Practice Laws and Rules provides:

> If an action is timely commenced and is terminated in any other manner than by a voluntary discontinuance, a failure to obtain personal jurisdiction over the defendant, a dismissal of the complaint for neglect to prosecute the action, or <u>a final judgment upon the merits</u>, the plaintiff, or, if the plaintiff dies, and the cause of action survives, his or her executor or administrator, may commence a new action upon the same transaction or occurrence or series of transactions or occurrences <u>within six months after the termination</u> provided that the new action would have been timely commenced at the time of commencement of the prior action and that service upon defendant is effected within such six-month period.

N.Y. C.P.L.R. § 205(a) (McKinney 2003 & Supp. 2011) (emphases supplied). Here, we need not decide whether the District Court's grant of summary judgment in favor of CNYPC as to Bergerson's state law claim, finding them "abandoned by plaintiff," was a decision on the merits. Even if it were not — thus leaving Bergerson with the benefit of § 205(a) — Bergerson did not seek to re-file her state law claims in state court within the 6-month period proscribed by the statute. Nor did she raise the issue before the District Court during this period; rather, she first contested the court's order on November 17, 2009, nearly seven months after the court's grant of summary judgment. As the District Court further noted, Bergerson never "cite[d] any legal authority compelling the modification of the prior order nor provide[d] an explanation for why this issue was not raised in her response to defendant's summary judgment motion." While Bergerson has argued that her then counsel "could not anticipate" the results of conceding error and withdrawing the state law claims, all litigants are "bound by the concessions of freely retained counsel." <u>Hoodho v. Holder</u>, 558 F.3d 184, 192 (2d Cir. 2009).

15

Because Bergerson did not pursue the matter diligently in the District Court, we conclude that Bergerson abandoned her state law claims. Accordingly, the court did not abuse its discretion in denying Bergerson's motion to remove its "abandonment" reference.

IV.    Attorney's Fees

Bergerson claims that the District Court abused its discretion by declining to award what she characterizes as "the reasonable rate of $275.00 per hour for her trial attorneys," instead awarding attorneys' fees at a rate of $210 per hour. She contends that a $210 hourly rate no longer represents the prevailing rate for experienced civil rights attorneys in the Northern District of New York and claims that the applicable rate is in the range of $250 and above.

Attorneys' fees are awarded by determining a presumptively reasonable fee, reached by multiplying a reasonable hourly rate by the number of reasonably expended hours. See Simmons v. N.Y. City Transit Auth., 575 F.3d 170, 174 (2d Cir. 2009). The reasonable hourly rate should be "'what a reasonable, paying client would be willing to pay,' given that such a party wishes 'to spend the minimum necessary to litigate the case effectively.'" Id. (quoting Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany, 493 F.3d 110, 112, 118 (2d Cir. 2007), amended on other grounds by 522 F.3d 182 (2d Cir. 2008)). This Circuit's "forum rule" generally requires use of "the hourly rates employed in the district in which the reviewing court sits in calculating the presumptively reasonable fee." Simmons, 575 F.3d at 174 (internal quotations omitted). Fees should not be awarded at higher out-of-district rates unless "a reasonable client would have selected out-of-district counsel because doing so would likely . . . produce a substantially better net result." Id. at 172.

Here, the District Court, quoting Picinich v. United Parcel Serv., No. 5:01-CV-01868, 2008 WL 1766746, at *2 (N.D.N.Y. Apr. 14, 2008), found that "'[t]he prevailing hourly rates in this district, which are what a reasonable, paying client would be willing to pay, are $210 per hour for an experienced attorney, $150 per hour for an attorney with more than four years experience, $120 per hour for an attorney with less than four years experience, and $80 per hour for paralegals.'" The

16

study upon which Picinich ultimately relies was undertaken by a district court in the Northern District in 2005. See Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany, No. 03-CV-502, 2005 WL 670307, at *7 (N.D.N.Y. Mar. 22, 2005). Since that time, more recent surveys in Northern District cases have indicated that, for a civil rights matter, the prevailing rate in the Northern District is higher than $210. See, e.g., Luessenhop v. Clinton County, N.Y., 558 F. Supp. 2d 247, 266 (N.D.N.Y. 2008); Martinez v. Thompson, No. 9:04-cv-0440, 2008 WL 5157395, at *14 (N.D.N.Y. Dec. 8, 2008).

In other cases, however, courts in the Northern District have continued to apply the rates set forth in Arbor Hill. See, e.g., Lewis v. City of Albany Police Dept., 554 F. Supp. 2d 297, 298–301 (N.D.N.Y. 2008); Paramount Pictures Corp.v. Hopkins, No. 5:07-CV-593, 2008 WL 314541, at *5 (N.D.N.Y. Feb. 4, 2008). Given that these courts have continued to adhere to the rates set forth in Arbor Hill, the District Court's award of attorney's fees at $210 per hour is "located within the range of permissible decisions" and does not rest on an "erroneous view of the law." See Sims, 534 F.3d at 132 (internal quotation marks omitted). Thus because our review is for abuse of discretion, we hold that the District Court's award, while perhaps lagging behind the market, was not an abuse of the court's discretion.

## CONCLUSION

Accordingly, we **AFFIRM** the decision below as to the dismissal of Bergerson's state law claims and the court's award of attorneys fees but **VACATE** the decision as to the court's denial of backpay, and **REMAND** the case to the district court for further proceedings consistent with this opinion, including consideration of whether there should be reinstatement or an award of front pay.