Aubrey CHISHOLM, Plaintiff,

v.

MEMORIAL SLOAN–KETTERING CANCER CENTER et al., Defendants.

Case No. 09 Civ. 8211.

United States District Court, S.D. New York.

Nov. 4, 2011.

574

Molly Smithsimon, Conover Law Offices, Brooklyn, NY, Bradford Darrach Conover, Conover Law Offices, New York City, NY, for Plaintiff.

Terri L. Chase, Joanne Mary Alnajjar, Jones Day, New York, NY, for Defendants.

### DECISION AND ORDER

VICTOR MARRERO, District Judge.

Plaintiff Aubrey Chisholm ("Chisholm") brought this action against his former em-

ployer, Memorial Sloan–Kettering Cancer Center ("Sloan–Kettering") and his former supervisors at Sloan–Kettering, Paul Adamec ("Adamec"), Cecile Coiro–Campbell, and Rosanna Fahy (collectively, "Defendants"), alleging unlawful retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"); 42 U.S.C. § 1981; New York State Human Rights Law, N.Y. Exec. Law § 290 et seq. ("NYSHRL"); and New York City Human Rights Law, N.Y.C. Admin. Code § 8–101 et seq. ("NYCHRL"). Following a trial held on May 17–26, 2011, the jury returned a verdict in favor of Chisholm and awarded him $233,290.32 in back pay. The jury also found that Chisholm was entitled to front pay in an amount to be determined by the Court. Finally, the jury found that Adamec should pay $1 million in punitive damages, for which Sloan–Kettering would be vicariously liable under the NYCHRL.

After the verdict was published, the Court indicated that it would consider remittitur of the jury's punitive damages award. On June 7, 2011, the Court held a telephone conference with the parties and made some preliminary observations regarding the punitive damages award. The Court gave the parties an opportunity to reach agreement on remittitur as well as on the open issue of front pay. By letter-briefs dated June 28, 2011, the parties indicated that they were unable to reach agreement on these issues, other than an agreement that any award of front pay should be discounted to present value at a rate of two percent. The Court deems Defendants' June 28, 2011 letter-brief as a motion for a new trial on punitive damages or, in the alternative, for remittitur of the punitive damages award, and deems Chisholm's June 28, 2011 letter-brief as his opposition to Defendants' motion.

For the reasons listed below, the Court finds that Chisholm is entitled to front pay

in the amount of $102,545.62 plus post-judgment interest. In addition, Defendants' motion for a new trial on punitive damages is granted, unless Chisholm elects to remit the punitive damages award against Adamec to $50,000. Finally, the Court concludes that Chisholm is entitled to pre-judgment interest on the award of back pay.

## I. *DISCUSSION*

### A. *FRONT PAY*

■■■ As an initial matter, Defendants contend that the jury's finding that Chisholm is entitled to an award of front pay constitutes an advisory verdict that the Court should reject. The Court disagrees. Although front pay is an equitable remedy under Title VII, any form of money damages, including front pay, is a legal remedy to be decided by the jury under the NYSHRL. *Thomas v. iStar Fin., Inc.,* 508 F.Supp.2d 252, 258 (S.D.N.Y.2007); *Epstein v. Kalvin–Miller Int'l, Inc.,* No. 96 Civ. 8158, 2000 WL 1761052, at *1 (S.D.N.Y. Nov. 29, 2000). Because the jury verdict made no distinction between damages under federal, state or local law, the Court considers the entire award of damages as if it were allocated to Chisholm's claim under the NYSHRL. *See Thomas,* 508 F.Supp.2d at 258. Consequently the question of Chisholm's entitlement to front pay was properly submitted to the jury. *See Jattan v. Queens Coll. of City Univ. of N.Y.,* 64 A.D.3d 540, 883 N.Y.S.2d 110, 113 (2d Dep't 2009).

■■■ The Court therefore proceeds to consider what amount of front pay would reasonably compensate Chisholm for his injuries established at trial. The purpose of an award of front pay is to make the victim of unlawful retaliation whole, *see Bergerson v. N.Y. State Office of Mental Health,* 652 F.3d 277, 285 (2d Cir.2011),

and should not "place the plaintiff in a better position than he would have occupied had he not been fired." *Thomas,* 508 F.Supp.2d at 260. In that connection the Court notes that the jury's back pay award implicitly assumed that Chisholm would have remained employed by Sloan–Kettering for more than four years after his termination and thus "goes a long way to making [Chisholm] whole." *See id.*

Chisholm seeks an award of front pay from the date of the verdict, May 26, 2011, to his projected retirement age of 65, which he will attain on January 13, 2020. Defendants respond that such an award, equal to approximately 8.5 years of pay, would be unduly speculative because Chisholm likely would have been terminated before 2020 for lawful, performance-based reasons. According to Defendants, an award of front pay through the end of 2014, equal to approximately 3.5 years of pay, would be reasonable under the circumstances.

■ The Court agrees with Defendants that an award of front pay through 2020 is not warranted. The leadership of Sloan–Kettering's transportation department changed substantially with the departure of Chisholm's former supervisor Keith Mitchell and the replacement of Mitchell with Adamec. The evidence at trial established that Chisholm had not adapted well to the new management style and had a poor working relationship with the management structure in place in 2007. Chisholm's frequent complaints about the quality of work performed on the night shift had created friction with other transportation department employees and supervisors. While the Court does not contest the jury's finding that the April 2007 logsheet incident was not the true reason for Chisholm's termination, Chisholm's behavior in connection with that incident is nonetheless relevant evidence of Chisholm's inappropriate workplace demeanor.

That Chisholm had retained transportation department documents in his locked desk drawer is troubling and indicative of behavior Defendants could justifiably regard as increasingly erratic. Under these circumstances, the Court concludes that it is unlikely that Chisholm would have remained employed by Sloan–Kettering through 2020. Rather, the Court is persuaded that it is more probable than not that Chisholm would have been terminated for lawful reasons, or chosen to leave Sloan–Kettering's employ, well before he attained retirement age.

■ "[A]n award of front pay cannot be unduly speculative." *Dunlap–McCuller v. Riese Org.,* 980 F.2d 153, 159 (2d Cir.1992); *see Press v. Concord Mortg. Corp.,* No. 08 Civ. 9497, 2010 WL 3199684, at *2 (S.D.N.Y. Aug. 11, 2010) (denying award of front pay where its calculation would be unduly speculative). To award front pay through 2020 would be unduly speculative and would arguably constitute a "windfall" to Chisholm. *See Press,* 2010 WL 3199684, at *2. The Court therefore concludes that no more than two years of front pay is warranted here. *See Hill v. Airborne Freight Corp.,* Nos. 97 Civ. 7098, 98 Civ. 6249, 2003 WL 366641, at *5 (E.D.N.Y. Feb. 20, 2003) (awarding front pay covering approximately one year and collecting cases).

■ In determining the appropriate rate of front pay, the Court is guided by the jury's back pay award. *See Thomas,* 508 F.Supp.2d at 261. The jury award of $233,290.32 in back pay covered the approximately four years and one month between Chisholm's termination on April 25, 2007, and the verdict on May 26, 2011. The jury accepted Chisholm's position that he would have continued to receive annual merit raises of four percent of his base salary. The jury apparently did not conclude that Chisholm would have continued

to earn overtime pay, which could have depended on the goodwill of Chisholm's supervisors. As a result the jury awarded Chisholm slightly less than the $263,985.19 that he had requested.

As to overtime pay, the Court agrees with the jury's conclusion. There is insufficient evidence to support a finding that Chisholm's supervisors, given the tensions that had developed between them and Chisholm, would have offered him overtime hours. As noted above, Chisholm's relationship with transportation department management had deteriorated in the years and months leading up to his termination. For the same reason, the Court finds no basis in the record to conclude that Chisholm would have continued to receive annual raises, especially not consistently at the relatively high rate of four percent, beyond 2007. Even absent friction between Chisholm and his supervisors, there is reason to doubt that Sloan–Kettering would have continued its pattern of generous annual raises following the global economic crisis of 2008. Consequently the Court finds that two years of front pay at Chisholm's 2007 base salary of $52,820.45, or a total of $105,640.90, is the maximum amount supported by the trial record. The Court thus finds that, reduced to present value at the agreed-upon discount rate of two percent, the front pay award Chisholm is entitled to amounts to $102,545.62.[1]

Additionally, Chisholm is entitled to post-judgment interest on that amount at the rate prescribed by 28 U.S.C. § 1961(a) from May 26, 2011, as calculated by the Clerk of Court. *See Becerril v. E. Bronx NAACP Child Dev. Ctr.*, No. 08 Civ. 10283, 2009 WL 2611950, at *11 (S.D.N.Y. Aug. 18, 2009), *report and recommendation adopted*, 2009 WL 2972992, at *1 (S.D.N.Y. Sept. 17, 2009).

Chisholm also seeks a front pay award in the amount of $201,750 as compensation for the reduced value of his pension from Sloan–Kettering. That figure is based upon a July 2006 pension plan statement provided to Chisholm by Sloan–Kettering and assumes that Chisholm would have remained employed at Sloan–Kettering through early 2020. (*See* Pl. Trial Ex. 149). The Court has already concluded, however, that the record does not support a finding that Chisholm would have remained at Sloan–Kettering beyond 2013. Chisholm has not supplied any evidence regarding his projected pension benefit if he had been terminated or otherwise left Sloan–Kettering's employ prior to retirement age. While a district court may consider lost pension benefits in calculating a front pay award, *see Luca v. Cnty. of Nassau*, No. 04 Civ. 4898, 2008 WL 2435569, at *5 (E.D.N.Y. June 16, 2008), *rev'd on other grounds*, 344 Fed.Appx. 637 (2d Cir.2009), any such award must be supported by evidence. The Court finds that Chisholm's proposed method for calculating lost pension benefits, which relies on a 2006 document projecting benefits based on assumed employment through 2020, is too speculative. Therefore the Court declines to award front pay to compensate Chisholm for any loss related to his pension. *See Sagendorf–Teal v. Cnty. of Rensselaer*, 100 F.3d 270, 277 (2d Cir. 1996) (affirming denial of front pay award where "the proposed methods for calculating the award were too speculative"). The Court notes that, to the extent Chisholm seeks compensation for lost pension benefits he would have accrued between his termination in 2007 and the verdict in

---

1. The parties agree that the Court should calculate present value using the formula $1/(1 + 0.02)^n$, where 0.02 represents the agreed-upon discount rate of two percent and $n$ represents the number of years in the future.

2011, any such losses are presumably included in the jury's award of back pay and may not now be added to the front pay award.

## B. *PUNITIVE DAMAGES*

After the close of the evidence, the Court determined that no rational jury could find the requisite degree of malice to support a punitive damages award against Sloan–Kettering or the individual defendants other than Adamec. Accordingly, the Court instructed the jury as to punitive damages against Adamec only. The Court further instructed the jury that, consistent with the NYCHRL, if it chose to award punitive damages against Adamec, Sloan–Kettering would be obligated to pay the amount of such damages. Finally, the Court instructed the jury that the amount of any punitive damages against Adamec imputed to Sloan–Kettering could be reduced, if the jury determined that Sloan–Kettering had mitigated its damages. The jury determined that Adamec should pay $1 million in punitive damages and that the full amount of the award should be imputed to Sloan–Kettering.

■■■ Defendants argue that the $1 million punitive damages award against Adamec shocks the judicial conscience and must be remitted. "Remittitur is the process by which a court compels a plaintiff to choose between a reduction of an excessive verdict and a new trial." *Thomas,* 508 F.Supp.2d at 257 (internal quotation marks omitted). "Before a court orders a plaintiff to make this choice, it must first determine whether the verdict is excessive." *Mendez v. Starwood Hotels & Resorts Worldwide, Inc.,* 746 F.Supp.2d 575, 600 (S.D.N.Y.2010). If so, the Court "should remit the jury's award to the maximum amount that would not be excessive." *Id.*

■■■ While the Court will not disturb the jury's factual determination that punitive damages are warranted against Ada-

mec, the amount awarded is clearly excessive in light of the circumstances of this case. In determining whether a particular punitive damages award is excessive, a court must keep in mind that "the purpose of punitive damage awards is to punish the defendant and to deter him and others from similar conduct in the future." *Vasbinder v. Scott,* 976 F.2d 118, 121 (2d Cir.1992). An award should be limited to the amount reasonably necessary to achieve that end. *Id.* At the opposite limit, "an award should not be so high as to result in the financial ruin of the defendant." *Id.*

■■■ A punitive damages award of $1 million against an individual defendant is excessive in all but the most egregious cases. *See, e.g., DiSorbo v. Hoy,* 343 F.3d 172, 189 (2d Cir.2003) (remitting punitive damages award of $1.275 million to $75,000). However, Chisholm contends that the $1 million figure is necessary to deter an institution such as Sloan–Kettering, which is vicariously liable for the award under the NYCHRL. Chisholm has not cited any authority for this proposition, and the Court is aware of none.

■■■ The NYCHRL provides that an employer is strictly liable for the unlawful retaliatory conduct of an employee where, as here, that employee "exercised managerial or supervisory responsibility." N.Y.C. Admin. Code § 8–107(13); *Zakrzewska v. New Sch.,* 14 N.Y.3d 469, 902 N.Y.S.2d 838, 928 N.E.2d 1035, 1040 (2010). While the text of the NYCHRL unambiguously provides for strict liability under the circumstances here, the Court is not persuaded that the strict liability provision alters the substantive standards for assessing the reasonableness of punitive damages awards. Rather, the Court concludes that it must apply the traditional guideposts in assessing the reasonableness of the award as to Adamec, regardless of

whether Sloan–Kettering ultimately will finance the award.

In *BMW of North America, Inc. v. Gore*, "[t]he Supreme Court has identified three 'guideposts' for determining whether punitive damages are excessive: (1) the degree of reprehensibility; (2) the ratio of the harm or potential harm suffered due to the defendant's conduct and the punitive damages awarded; and (3) the difference between the remedy and any civil penalties authorized or imposed in comparable cases." *Mugavero v. Arms Acres, Inc.*, 680 F.Supp.2d 544, 588 (S.D.N.Y.2010). *See generally BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 574–75, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996). Of the three *Gore* guideposts, the first—the degree of reprehensibility—is "the most important" in determining the reasonableness of a punitive damages award. *See State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 419, 123 S.Ct. 1513, 155 L.Ed.2d 585 (2003). To analyze the degree of reprehensibility, the Court must focus on Adamec's actions, not Sloan–Kettering's, which confirms the Court's conclusion that Sloan–Kettering's vicarious liability does not alter the required inquiry.

Application of the *Gore* guideposts to this case leads the Court to conclude that a remittitur of the jury's punitive damages award to $50,000 is appropriate and represents the maximum amount that the Court could uphold. While Adamec's conduct was certainly reprehensible, as the jury found, it did not involve violence or the threat of violence. *See Lee v. Edwards*, 101 F.3d 805, 809 (2d Cir.1996). Nor did it involve racial slurs or other offensive language. *See Patterson v. Balsamico*, 440 F.3d 104, 109, 122–23 (2d Cir. 2006). Moreover, an award of $50,000 represents a significant financial hardship to an individual defendant. *See id.* at 122–23 (remitting punitive damages award of $20,000 to $10,000 where individual defen-

dant assaulted plaintiff, sprayed him with mace and taunted him with racial slurs). While comparing the punitive damages award in this case to awards in other cases is necessarily "of limited utility" because each award is fact-specific, *see Mugavero*, 680 F.Supp.2d at 589–90, the Court finds that an award of $50,000 is more in line with the punitive damages awarded in similar cases by this Court and other courts in this Circuit. *See Thomas*, 508 F.Supp.2d at 263 (collecting cases). Therefore, unless Chisholm agrees to accept a punitive damages award of $50,000, the Court will order a new trial on punitive damages.

### C. PRE–JUDGMENT INTEREST

The Court concludes that Chisholm is entitled to pre-judgment interest on his award of back pay. While the question of whether to award pre-judgment interest ordinarily is left to the discretion of the court, where the damages award represents compensation for back pay, "it is ordinarily an abuse of discretion *not* to include prejudgment interest." *Gierlinger v. Gleason*, 160 F.3d 858, 873 (2d Cir.1998) (emphasis in original). Consequently, district courts within this Circuit "routinely allow recovery of pre-judgment interest on awards of back pay and lost wages." *Augustin v. Jablonsky*, 819 F.Supp.2d 153, 178, Nos. 99 Civ. 3126, 99 Civ. 2844, 99 Civ. 4238, 2011 WL 4953982, at *21 (E.D.N.Y. Oct. 19, 2011) (collecting cases). The Court sees no reason to depart from this practice. Accordingly, Chisholm is entitled to pre-judgment interest on the back pay award of $233,290.32 from April 25, 2007 until the entry of judgment. The applicable interest rate shall be the average rate of return on one-year Treasury bills for the relevant time period, *see* 28 U.S.C. § 1961(a), and the interest shall be compounded annually. *See Thomas*, 508 F.Supp.2d at 264. The Clerk of Court is directed to use this

methodology to calculate pre-judgment interest on the back pay award.

## II. *ORDER*

For the reasons stated above, it is hereby

**ORDERED** that the motion for a new trial on punitive damages that the Court has deemed contained in the letter (Docket No. 77) submitted by defendants Memorial Sloan–Kettering Cancer Center, Paul Adamec ("Adamec"), Cecile Coiro–Campbell, and Rosanna Fahy (collectively, "Defendants") is **GRANTED,** unless plaintiff Aubrey Chisholm ("Chisholm") elects to remit the punitive damages award against Adamec to $50,000; and it is further

**ORDERED** that Chisholm's election shall be filed with the Court and served on Defendants within fourteen (14) days of this Decision and Order; and it is finally

**ORDERED** that preliminary judgment, subject to Chisholm's election as set forth above, be entered in accordance with the jury's verdict and this Decision and Order as follows:

(a) back pay in the amount of $233,290.32 plus pre-judgment interest against all Defendants;

(b) front pay in the amount of $102,545.62 plus post-judgment interest against all Defendants; and

(c) punitive damages in the amount of $50,000 against Adamec.

The Clerk of Court is directed to terminate any pending motions and to close this, case, subject to reopening in the event plaintiff files an application for attorneys fees.

**SO ORDERED.**