**UNITED STATES of America, Plaintiff,**

v.

**PREVEZON HOLDINGS, LTD., et al., Defendants.**

No. 13–cv–6326 (WHP)

United States District Court, S.D. New York.

Signed 02/27/2017

Andrew Caldwell Adams, Christine Ingrid Magdo, Cristine Irvin Phillips, Jaimie Leeser Nawaday, Margaret Graham, Paul Michael Monteleoni, Tara Marie La Morte, U.S. Attorney's Office, SDNY, New York, NY, for Plaintiff.

John W. Moscow, Jessie Morgan Gabriel, Loura Laresa Alaverdi, Baker & Hostetler LLP, Seth T. Taube, Richard Benjamin Harper, Baker Botts L.L.P, Adam Michael Abensohn, Renita Sharma, Quinn Emanuel Urquhart & Sullivan LLP, Faith E. Gay, Kevin Samuel Reed, Quinn Emanuel, New York, NY, Mark Alan Cymrot, Paul M. Levine, Baker & Hostetler LLP, Vernon Anthony Andrew Cassin, III, Baker Botts L.L.P., Washington, DC, for Defendants.

## MEMORANDUM AND ORDER

### WILLIAM H. PAULEY III, U.S.D.J.:

Defendants Prevezon Holdings, Ltd. and related entities ("Prevezon") move to compel a second deposition of non-party William Browder. For the following reasons, Prevezon's motion is granted in part.

## BACKGROUND

Despite being a non-party, William Browder is a fulcrum in this litigation. He is the Chief Executive Officer and co-founder of Hermitage Capital Management ("Hermitage"). According to the Government, Hermitage is at the center of an alleged fraud orchestrated by a Russian criminal organization (the "Organization"). (Second Amended Complaint ("SAC") ¶ 18–20 (ECF No. 381).) The Second Amended Complaint alleges that the Organization obtained judgments approximating one billion dollars by way of sham lawsuits against a number of Hermitage's companies. (SAC ¶ 19.) Those collusive money judgments were then utilized by the Organization to reap a $230 million windfall tax refund from the Russian treasury (the "Russian Treasury Fraud"). (SAC ¶ 20.) To conceal the fraud, the Organization allegedly laundered monies through a web of entities and transactions, including the purchase of Manhattan real estate, inuring to Prevezon's benefit. (See SAC ¶ 2.)

After learning of the fraud, Browder investigated and then launched a counterattack against members of the Organization he believed were behind the scheme. Over the course of several years, Browder persuaded various sovereigns, including the United States, to impose sanctions and travel restrictions on Russian officials involved in the Russian Treasury Fraud. Notably, Browder's efforts culminated in the Magnitsky Act, the eponymous law inspired by Hermitage's lawyer who traced the $230 million tax fraud. (See SAC ¶ 17.) Separately, Browder has shared Hermitage's story with the main-

stream media, published an account of the Russian Treasury Fraud in a memoir, and maintains a website devoted to various issues relating to Hermitage and Magnitsky.

While Browder is alleged to have supplied many of the allegations undergirding the Government's claims in this action, he definitively entered the fray in 2015 when Prevezon subpoenaed him for deposition. After repeatedly attempting to quash the subpoena, Judge Griesa ordered Browder to appear for a deposition on April 15, 2015 (the "First Deposition"). (See ECF No. 252.) Although Browder produced a number of documents prior to the First Deposition, he produced more on a rolling basis thereafter. The Government also supplied Prevezon with a separate cache of Hermitage–related documents after the First Deposition. (Prevezon letter dated February 21, 2017 ("Prevezon Ltr."), at 4 (ECF No. 561).)

Following the First Deposition, Prevezon sought a second one on the basis of "new discovery and new allegations" drawn from both Browder's document productions subsequent to the First Deposition and the Government's Hermitage–specific documents. (Prevezon Ltr., at 4.) On November 9, 2015, Judge Griesa ordered Browder to appear for a second deposition on November 23, 2015 (the "November 2015 Order"). (See Transcript dated November 9, 2015 ("Tr.") (ECF No. 448).) That deposition was adjourned twice before Prevezon moved for sanctions, claiming that Browder's refusal to appear constituted contempt of court. Judge Griesa declined to sanction Browder, but directed him to appear for deposition on December 18, 2015. (See ECF No. 490.) Thereafter, that deposition was stayed as a result of Browder's motion to disqualify Prevezon's counsel.

Any insinuation that Browder is a marginal player in this action is belied by his activist role in supplying information to the Government, his relentless media blitzkrieg, and his longstanding but unsuccessful efforts to avoid a deposition. And those activities were eclipsed by Browder's motion to disqualify Prevezon's counsel in December 2015, underscoring his outsized role in this litigation.

## DISCUSSION

■ Browder opposes Prevezon's motion to compel a second deposition on grounds that there is no good cause to justify it. (Letter dated February 23, 2017 ("Browder Ltr."), at 1 (ECF No. 562).) He argues that this Court—to which the action was re-assigned in April 2016—should make an independent determination of whether a second deposition is warranted because Judge Griesa's order lacked a proper basis. (Browder Ltr., at 1 n.1.)

■ "[C]ase reassignment does not put settled issues back into play. If it did, the result would be increased uncertainty and needless depletion of judicial resources." Dandong v. Pinnacle Performance Ltd., 2012 WL 6217646, at *2 (S.D.N.Y. Dec. 3, 2012). In reconsidering a prior order, there is a "strong presumption against [ ] amendment" absent an "intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent a manifest injustice." Bergerson v. N.Y. State Office of Mental Health, Cent. N.Y. Psychiatric Ctr., 652 F.3d 277, 288–89 (2d Cir. 2011); Dandong, 2012 WL 6217646, at *1 ("[R]econsideration of a court's previous order is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources" and may be reconsidered if the court "overlooked controlling decisions or factual matters that were put before it on the underlying motion."). Judge Griesa exercised his broad discretion in ordering a second deposition. But because it is unclear whether the November 2015 Order, issued on the record during a telephonic conference among the parties, sufficiently considered certain factual matters, this Court undertakes an independent evaluation of the law and facts in resolving this motion. (See, e.g., Tr., at 12:1–6.)

■ Prevezon's request is rooted in Federal Rule of Civil Procedure 30(a)(2)(A)(ii), which provides that leave of court is required to conduct a deposition when "the deponent has already been deposed in the case." This Court has "discretion to make a determination which is fair and equitable under all the relevant circumstances." Ganci v. U.S. Limousine Serv., Ltd., 2011 WL 4407461, at *2

(E.D.N.Y. Sept. 21, 2011). Rule 26(b)(2) enumerates certain factors guiding this Court's discretion: (1) whether the second deposition of the witness would be unnecessarily cumulative; (2) whether the party requesting the deposition has had other opportunities to obtain the same information; and (3) whether the burden of a second deposition outweighs its potential benefit. Ganci, 2011 WL 4407461, at *2.

▮ A court may deny a second deposition even if "relevant documents are produced subsequent to the [first] deposition if the party taking the deposition either failed to request those documents in timely fashion or chose to conduct the deposition prior to the completion of document discovery." Eaton Corp. v. Weeks, 2014 WL 700466, at *3 (E.D. Mich. Feb. 24, 2014) (citing Fresenius Med. Care Holdings, Inc. v. Roxane Labs., Inc., 2007 WL 764302, at *2 (S.D. Ohio Mar. 9, 2007)) (emphasis added). Prevezon's decision to proceed with the First Deposition was premature in view of Browder's representation that he could not complete his production before the deposition. (Browder Ltr., Ex. B.) Browder is certainly not faultless here, having notified Prevezon of his inability to complete document production a mere six days before the First Deposition. At that point, he had only produced documents responsive to seven of 33 requests. (Browder Ltr., at 3.) Had Prevezon adjourned the First Deposition and waited for additional, salient documents, it could have made better use of time, explored a wider breadth of documents, and entirely obviated the need for a second deposition.

Here, however, the "burden of redeposing [this witness]," in view of critical information that could severely undermine one of the Government's claims—money laundering—is "outstripped by the potential importance of the issue[s]." See Keck v. Union Bank of Switzerland, 1997 WL 411931, at *2 (S.D.N.Y. July 22, 1997). Browder's and the Government's subsequent productions—voluminous and substantial in nature—relate to matters uniquely within Browder's knowledge, and his testimony bears on the relevance of the Government's theory regarding, among other things, whether the Russian

Treasury Fraud constituted a fraud against HSBC Suisse, a proprietary investor in Hermitage. (Prevezon Ltr., at 4.) Because the Government seeks to use the purported fraud against HSBC Suisse as "specified unlawful activity sufficient to support a claim of money laundering," Browder's testimony will either undermine or strengthen Prevezon's defense. (Prevezon Ltr., at 4.) Examination of these issues will not be cumulative of the testimony elicited from the First Deposition because while other HSBC entities were discussed, "there were no questions directed to the issue, which only became relevant later, as to whether HSBC Suisse suffered losses in connection with the Russian Treasury Fraud." (Prevezon Ltr., at 2.)

▮ "Where [a] deposition is reopened because of newly discovered information, the questioning of the witness is limited to [issues] relating to the newly produced information." Ganci, 2011 WL 4407461, at *2. Accordingly, the continued deposition should be narrowly tailored to examine new issues arising from the documents obtained after the First Deposition and avoid eliciting cumulative testimony. Some of the topics may include "financial statements for the Hermitage Fund, Glendora and Kane, and the trust instrument for the Hermitage Fund," as Browder suggests (Browder Ltr., at 5 n.5), but Prevezon is free to examine Browder on any issues revealed by the newly obtained documents. A party is "not required to enumerate [its] deposition topics and pre-notice [the deponent] of the subjects about which he will inquire." Bailey v. Kentucky Cmty. and Tech. Coll. Sys., 2015 WL 4886089, at *1 n.1 (W.D. Ky. Aug. 17, 2015).

To ensure that the parties are focused and efficient, the deposition shall be limited to four hours, exclusive of any break time. Consistent with the agreement between the parties regarding the First Deposition, Prevezon shall pay for roundtrip travel and incidental expenses for one Kobre & Kim LLP attorney to attend the deposition in London (Browder Ltr., at 5 n.5, Exs. B and C) and for the attorney's fees incurred in connection with defending Browder at the deposition. See Hoff v. WPIX, Inc., 2012 WL 4471445 (S.D.N.Y. Sept. 21, 2012). The deposition

shall be completed on or before March 31, 2017.

## CONCLUSION

For the foregoing reasons, in this Court's informed discretion, Prevezon's motion to compel a second Browder deposition is granted. Prevezon shall depose Browder in London for no more than four hours, exclusive of break time. Prevezon is also directed to pay for Browder's counsel's costs and fees associated with the deposition.

SO ORDERED.